CECIL V. CHERRY, SR., INDIVIDUALLY, AND CECIL V. CHERRY, SR., EXECUTOR OF THE ESTATE OF BESSIE JONES CHERRY, PLAINTIFFS v. LAWRENCE S. HARRIS, DEFENDANT

No. 923SC349

(Filed 1 June 1993)

**Public Officers and Employees § 35 (NCI4th) — forensic pathologist — autopsy at medical examiner's request — public officer — governmental immunity**

The doctrine of governmental immunity protected defendant, a forensic pathologist who was also a county medical examiner, from liability for alleged negligence in issuing an initial autopsy report stating that plaintiffs' son died as a result of suicide where defendant was officially requested by the medical examiner of another county to perform the autopsy to serve the public interest, and where defendant acted in good faith and within the scope of his responsibilities and duties as a designated pathologist.

**Am Jur 2d, Public Officers and Employees §§ 358 et seq., 375.**

**Validity and construction of statute authorizing or requiring governmental unit to indemnity public officer or employee for liability arising out of performance of public duties. 71 ALR3d 90.**

Appeal by plaintiffs from order entered in open court 7 October 1991 and filed 10 October 1991 by Judge David E. Reid, Jr., in Pitt County Superior Court. Heard in the Court of Appeals 11 March 1993.

*Gaylord, Singleton, McNally, Strickland & Snyder, by Vernon G. Snyder III, for plaintiff appellants.*

*Williamson, Herrin, Barnhill, Savage & Morano, by Mark R. Morano, for defendant appellee.*

COZORT, Judge.

Plaintiffs filed suit against defendant on 26 April 1991 to recover damages for negligent infliction of emotional distress and for recovery of expenses associated with the initial rejection of claims under

life insurance policies under which they were beneficiaries. Plaintiffs' action was filed as the result of an autopsy report issued by defendant stating that their son's cause of death was suicide. The trial court granted summary judgment for defendant based on the doctrine of governmental immunity. Plaintiffs appeal. We affirm.

Plaintiff Cecil V. Cherry, Sr., and plaintiff's testate Bessie Jones Cherry, are the parents of the deceased, William Benjamin Cherry, who died on 13 February 1988. After William Cherry's death, the Beaufort County Medical Examiner, Elizabeth Cook, M.D., requested that defendant Lawrence S. Harris, M.D., perform an autopsy on the body. Defendant is a forensic pathologist employed by the East Carolina University School of Medicine. He also serves as a medical examiner for Pitt County.

Defendant complied with Dr. Cook's request by performing an autopsy at Pitt County Memorial Hospital in Greenville, North Carolina, on 14 February 1988. Defendant prepared a summary report of the autopsy dated 12 April 1988, which was issued and released to plaintiff and plaintiff's testate. The recited opinion of defendant was that the cause of death of William Cherry was "Acute toxicity of trimipramine" and the manner of death was "suicide." Defendant was asked to re-evaluate the cause and manner of death of Mr. Cherry. Defendant issued a revised summary report of the autopsy on 24 August 1988, which indicated that Mr. Cherry's cause of death consisted of "Acute combined toxicity of trimipramine and phentermine," and the manner of death was "Accidental-therapeutic complication."

Plaintiffs thereupon filed this action based upon the alleged negligent acts and omissions of defendant which resulted in the initial autopsy report. Conflicting medical opinions as to the issues of defendant's negligence and conformity with the standard of care for forensic pathologists were submitted in affidavits.

Defendant originally made a motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Later, on 27 September 1991, defendant converted his Rule 12(b)(6) motion to a motion for summary judgment by filing affidavits with the trial court in accordance with N.C. Gen. Stat. § 1A-1, Rule 56 (1990). The trial court granted defendant's motion for summary judgment based on the finding that defendant "was acting in the capacity of medical examiner . . . [and] [t]hat in that

capacity, Dr. Harris was acting as a public official protected by immunity; the official immunity that is governmental immunity that is afforded to a public official."

The issue presented on appeal is whether the trial court erred in granting the defendant's motion for summary judgment. Plaintiffs contend the trial court erred in determining that (1) defendant was acting as a public officer for immunity purposes; and (2) defendant should be afforded governmental immunity for his actions. No case in North Carolina speaks to the narrow issue present here: whether the doctrine of governmental immunity protects a medical examiner from alleged liability for negligence when he was officially requested by another medical examiner to conduct an autopsy to serve the public interest.

This Court has previously discussed the applicability of governmental immunity to actions by public officers:

> When a governmental worker is sued individually, or in his or her personal capacity, our courts distinguish between public employees and public officers in determining negligence liability. A public officer sued individually is normally immune from liability for "mere negligence."

*Hare v. Butler,* 99 N.C. App. 693, 699-700, 394 S.E.2d 231, 236, *disc. review denied,* 327 N.C. 634, 399 S.E.2d 121 (1990) (citations omitted). The definition of a public officer is someone whose "position [is] created by the constitution or statutes of the sovereignty . . . ." *State v. Hord,* 264 N.C. 149, 155, 141 S.E.2d 241, 245 (1965). "An essential difference between a public office and mere employment is the fact that the duties of the incumbent of an office shall involve the exercise of some portion of the sovereign power." *Id.* "Officers exercise a certain amount of discretion, while employees perform ministerial duties." *Hare,* 99 N.C. App. at 700, 394 S.E.2d at 236. "Discretionary acts are those requiring personal deliberation, decision and judgment; duties are ministerial when they are 'absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts.'" *Id.* (quoting *Jensen v. S.C. Dep't of Social Services,* 297 S.C. 323, 377 S.E.2d 102 (1988)).

Our Supreme Court has determined that county coroners are public officers, *Gillikin v. U.S.F.& G. Co.,* 254 N.C. 247, 118 S.E.2d 606 (1961), as are medical examiners, *Grad v. Kaasa,* 312 N.C. 310,

321 S.E.2d 888 (1984), for purposes of applying the governmental immunity doctrine. Plaintiffs argue, however, that a medical examiner should be granted public official immunity only for actions performed within the executive level of his or her statutorily defined office as medical examiner and not for actions performed at an operational level in the capacity of physician or forensic pathologist. We disagree.

We find a federal case, *Lawyer v. Kernodle*, 721 F.2d 632 (8th Cir. 1983), instructive. In *Lawyer*, a pathologist who conducted an autopsy was sued by the decedent's family. The plaintiff claimed the defendant negligently diagnosed the cause of death. The defendant pathologist was not a coroner; rather, he was an employee of a company the county coroner had hired to perform autopsies in that county. The court stated:

> We think it clear that [the doctor], in performing the autopsy of [decedent] for [the county], was acting under *color of state law and was exercising his professional judgment and discretion. His services were engaged pursuant to statutory authority* and his opinion as to the cause of death became the basis of the government's decision whether to bring criminal charges. . . . Since he was engaged under the statute to perform official duties, he was performing those duties under color of state law and he clearly enjoyed the same immunity privilege the coroner could assert.

*Lawyer*, 721 F.2d at 635 (emphasis added).

In the case below, defendant conducted the autopsy and prepared his reports in response to an official request by the Beaufort County Medical Examiner, Dr. Cook. As part of her investigation into the unnatural death of William Cherry, Dr. Cook had the statutory authority pursuant to N.C. Gen. Stat. § 130A-389(a) (1992) to order that an autopsy be performed by a pathologist who has been designated by the Chief Medical Examiner. Defendant, a board certified forensic pathologist, had such approval. Defendant was required to prepare a "complete autopsy report of findings and interpretations" pursuant to N.C. Gen. Stat. § 130A-389(a). He received no compensation for conducting the examination. The materials before the trial court additionally tended to show that defendant acted in good faith and within the scope of his responsibilities and duties as a designated pathologist. Defendant exercised personal deliberation, decision, and judgment in applying his medical

expertise to conduct an autopsy and to render an expert opinion as to the cause and manner of William Cherry's death. Furthermore, there is no allegation, and we find no evidence that defendant acted with any ill will or malice toward Mr. Cherry or his family. We therefore find that defendant is entitled to the immunity afforded a public official. The order granting summary judgment in defendant's favor is

Affirmed.

Judges EAGLES and WYNN concur.