HAMLET EPPS, ROBERT EPPS, MARY MONTGOMERY, JENNIFER DANIEL, AND HAZEL GADSON, PLAINTIFFS v. DUKE UNIVERSITY, INC., A NORTH CAROLINA CORPORATION, PRIVATE DIAGNOSTIC CLINIC, A NORTH CAROLINA PARTNERSHIP, JOHN PETER LONGABAUGH, M.D., NATHAN PULKINGHAM, M.D., RUSSELL HJELMSTAD, M.D., MICHAEL WILSON, M.D., AND KATHRYN LANE, M.D., DEFENDANTS

No. COA95-182

(Filed 16 April 1996)

**1. Appeal and Error § 555 (NCI4th)— personal action against county medical examiners—valid claim—summary judgment for defendant properly denied**

A prior decision in this case, *Epps v. Duke University*, 116 N.C.App. 305, established the law of this case as it related to the sufficiency of plaintiffs' pleadings, holding that plaintiffs correctly maintained a valid claim for wrongful autopsy against defendant county medical examiner in his individual capacity as a public officer.

**Am Jur 2d, Appellate Review §§ 60 et seq.**

**Erroneous decision as law of the case on subsequent appellate review. 87 ALR2d 271.**

**2. Public Officers and Employees § 35 (NCI4th)— action against official in individual capacity—showing required— cases not inconsistent**

*Hare v. Butler*, 99 N.C.App. 693, and the cases using *Hare* "mere negligence" language, comport with those cases using language similar to that in *Thompson Cadillac v. Silk Hope Auto*, 87 N.C.App. 467, and are not contrary statements of North Carolina's official immunity doctrine, which is that, as long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability. A plaintiff bringing an individual capacity suit against an official must allege and prove more than mere negligence, but also some action performed under color of authority which falls within one of the exceptions rendering an official liable individually or personally.

**Am Jur 2d, Public Officers and Employees §§ 358 et seq., 375.**

**Validity and construction of statute authorizing or requiring governmental unit to procure liability insurance covering public officers or employees for liability arising out of performance of public duties. 71 ALR3d 6.**

**Validity and construction of statute authorizing or requiring governmental unit to indemnify public officer or employee for liability arising out of performance of public duties. 71 ALR3d 90.**

**3. Coroners and Medical Examiners § 32 (NCI4th)— medical examiner—wrongful autopsy—genuine issue of fact**

The trial court properly denied defendant county medical examiner's motion for summary judgment in an action against him in his individual capacity for wrongful autopsy where plaintiffs' forecast of evidence established a genuine issue of fact as to whether defendant exceeded the scope of his official duties during an autopsy to determine the cause of death of the decedent after heart surgery when he mutilated the body by removing decedent's eyes, spinal cord and spinal vertebrae.

**Am Jur 2d, Coroners or Medical Examiners § 5.**

**Liability for wrongful autopsy. 18 ALR4th 858.**

Appeal by defendant Hjelmstad from denial of summary judgment entered 6 December 1994 by Judge Henry V. Barnette, Jr., in Durham County Superior Court. Heard in the Court of Appeals 14 November 1995.

*Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, P.A., by Adam Stein and Ann Hubbard, for plaintiff appellees.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Mabel Y. Bullock, for defendant appellant.*

SMITH, Judge.

In this appeal from the trial court's denial of summary judgment, defendant appellant Dr. Russell Hjelmstad (hereinafter "Hjelmstad") contends he is not individually liable to plaintiffs in tort, because of the doctrine of public official immunity. Defendant argues plaintiffs' complaint is defective because it asserts a claim against a state officer acting in his official capacity. Therefore, defendant contends plaintiffs' action is barred by public official immunity.

Plaintiffs argue denial of summary judgment was proper, due to this Court's prior ruling in *Epps v. Duke University*, 116 N.C. App. 305, 447 S.E.2d 444 (1994) (*Epps* I). In *Epps* I, this Court held that plaintiffs had stated a "valid claim against Hjelmstad in his individual capacity as a public officer." *Id.* at 311, 447 S.E.2d at 448. The instant appeal poses the same official immunity issue decided in *Epps* I, set now against the legal standards of a summary judgment motion.

[1] In disposing of defendant's arguments for summary judgment, we hold the following. First, we agree with plaintiffs that *Epps* I established the law of this case as it relates to the sufficiency of plaintiffs' pleadings. Plaintiffs have correctly maintained a personal or individual capacity claim against defendant Hjelmstad. Thus, defendant's arguments to the contrary are baseless in light of *Epps* I. In addition, we find the affidavits in the record squarely present disputed material facts, demonstrate that defendant is not entitled to judgment as a matter of law, and mandate affirmance of the trial court's denial of summary judgment against defendant.

The facts and posture of this case are as follows. The plaintiffs are the next of kin of Dora Epps McNair, who died in 1990, shortly after surgery involving a cardiac catheterization and attempted placement of an intra-aortic pump. The surgery was unsuccessful. Because of the manner of decedent's death, it was decided by the treating physician at Duke University Medical Center's Coronary Care Unit that an autopsy was required by state law.

Plaintiffs' action arises from the alleged wrongful autopsy of Dora Epps McNair, which autopsy was ordered and supervised by defendant Hjelmstad. Plaintiffs allege that "the excessive mutilat[ion] of Ms. McNair's body during [the] autopsy at Duke University Medical Center ("Duke") left her body disfigured and in a state that could not be embalmed and viewed as she had wished." At all times relevant to this dispute, Hjelmstad occupied dual roles as resident pathologist at Duke University Medical Center (Duke), and as Durham County Medical Examiner pursuant to N.C. Gen. Stat. § 130A-382 (1995). It is undisputed that Hjelmstad is being sued for activities performed under color of his authority as medical examiner. Defendant Hjelmstad is the only named defendant involved in this appeal.

Because defendant Hjelmstad performed the autopsy while acting under color of authority as medical examiner, he first moved to dismiss this case for failure to state a claim for relief on grounds of official immunity. Defendant's motion to dismiss was the basis of

*Epps* I. The *Epps* I Court upheld the trial court's denial of defendant's dismissal motion by holding that,

> because plaintiffs' complaint contains allegations indicating that Hjelmstad acted outside the scope of his official duties, they have stated a valid claim against Hjelmstad in his individual capacity as a public officer.

*Epps* I, 116 N.C. App. at 311, 447 S.E.2d at 448. On remand from the *Epps* I Court, defendant Hjelmstad moved for summary judgment against plaintiffs. The trial court denied this motion, which is now the subject of this appeal.

Usually, the denial of a motion for summary judgment is not immediately appealable, as it is interlocutory. *See Herndon v. Barrett*, 101 N.C. App. 636, 639, 400 S.E.2d 767, 769 (1991). However, denial of a motion for summary judgment " 'on the grounds of sovereign and qualified immunity is immediately appealable.' " *Id.* (citation omitted). Such is the case here, where defendant Hjelmstad seeks to interpose his official immunity as a shield against liability to plaintiffs. We allow interlocutory appeals in these situations because " 'the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action.' " *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 525, 86 L.Ed.2d 411, 424 (1985)).

Plaintiffs maintain the law of the case doctrine necessitates a ruling in their favor. We have previously held, "[a] decision of this Court on a prior appeal constitutes the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal. '[O]ur mandate is binding upon [the trial court] and must be strictly followed without variation or departure.' " *Lea Co. v. N.C. Board of Transportation*, 323 N.C. 697, 699, 374 S.E.2d 866, 868 (1989) (citation omitted) (quoting *D & W, Inc. v. Charlotte*, 268 N.C. 720, 722, 152 S.E.2d 199, 202 (1966)). Thus the argument by plaintiffs is well made, for much of defendant Hjelmstad's brief addresses issues resolved by *Epps* I.

Indeed, it is the law of this case that plaintiffs "have stated a valid claim against Hjelmstad in his individual capacity as a public officer." *Epps* I, 116 N.C. App. at 311, 447 S.E.2d at 448. Thus, insofar as defendant now addresses the sufficiency of plaintiffs' complaint against Hjelmstad, that matter is settled. *Id.* The only remaining examination apropos to our review of this appeal is defendant's argument relevant to the legal standard for summary judgment.

A party will prevail on a motion for summary judgment only if the moving party (here, defendant) can show no material facts are in dispute and entitlement to judgment as a matter of law. *Moore v. City of Creedmoor*, 120 N.C. App. 27, 36, 460 S.E.2d 899, 904 (1995). In addition, the record is to be viewed in the light most favorable to the non-movant, giving it the benefit of all inferences which reasonably arise therefrom. *Id.* Evidence properly considered on a motion for summary judgment "includes admissions in the pleadings, depositions on file, answers to Rule 33 interrogatories, admissions on file . . . affidavits, and any other material which would be admissible in evidence or of which judicial notice may properly be taken." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 533, 180 S.E.2d 823, 829 (1971).

Defendant's argument and evidence fall far short of the "no material fact in dispute" standard long adopted by this Court. We held in *Epps* I that defendant Hjelmstad, acting in his capacity as a county medical examiner, is a public officer. *Epps* I, 116 N.C. App. at 311, 447 S.E.2d at 448. The *Epps* I Court also held that "because plaintiffs' complaint contains allegations indicating that Hjelmstad acted outside the scope of his official duties, they have stated a valid claim against Hjelmstad in his individual capacity as a public officer." *Id.* Thus, to prevail on his motion for summary judgment, defendant must show that plaintiffs' presentation of properly considered evidence falls short of the allegations found in their complaint. This the defendant has not done.

[2] The common law rules governing individual or personal capacity suits against a public official in tort have remained virtually unchanged for almost a century. *See* N.C. Supreme Court opinions: *Lewis v. White*, 287 N.C. 625, 643, 216 S.E.2d 134, 146 (1975); *Williamston v. R.R.*, 236 N.C. 271, 275, 72 S.E.2d 609, 612 (1952); *Smith v. Hefner*, 235 N.C. 1, 7, 68 S.E.2d 783, 787-88 (1952); *Teer v. Jordan*, 232 N.C. 48, 51-52, 59 S.E.2d 359, 362 (1950); *Schloss v. Highway Commission*, 230 N.C. 489, 492, 53 S.E.2d 517, 518-19 (1949); *Gurganious v. Simpson*, 213 N.C. 613, 616, 197 S.E. 163, 164 (1938); *Carpenter v. R.R.*, 184 N.C. 400, 404-06, 114 S.E. 693, 695-96 (1922); *Templeton v. Beard*, 159 N.C. 63, 65, 74 S.E. 735, 736 (1912). And, *see* N.C. Court of Appeals opinions: *Golden Rule Ins. Co. v. Long*, 113 N.C. App. 187, 193-94, 439 S.E.2d 599, 602-03, *disc. review denied*, 335 N.C. 555, 439 S.E.2d 145 (1993); *Dickens v. Thorne*, 110 N.C. App. 39, 45, 429 S.E.2d 176, 180 (1993); *Locus v. Fayetteville State University*, 102 N.C. App. 522, 526, 402 S.E.2d 862, 865 (1991); *Mazzucco v. N.C. Bd. of Medical Examiners*, 31 N.C. App. 47, 49-50,

228 S.E.2d 529, 531-32, *disc. review denied*, 291 N.C. 323, 230 S.E.2d 676 (1976).

A suit against a public official in his official capacity is basically a suit against the public entity (*i.e.*, the state) he represents. *Dickens*, 110 N.C. App. 39, 45, 429 S.E.2d 176, 180 (1993); *Lewis*, 287 N.C. at 643, 216 S.E.2d at 146. Therefore, an official capacity suit operates against the public entity itself, as the public entity is ultimately financially responsible for the compensable conduct of its officers. *Id.*; *see Mazzucco*, 31 N.C. App. at 49, 228 S.E.2d at 531. This state's doctrine of sovereign immunity is over a century old. *Steelman v. City of New Bern*, 279 N.C. 589, 591-94, 184 S.E.2d 239, 241 (1971) (discussing adoption of sovereign immunity by our Supreme Court in *Moffitt v. Asheville*, 103 N.C. 237, 254, 9 S.E. 695, 697 (1889)).

Official immunity is a derivative form of sovereign immunity. Sovereign immunity extends from feudal England's theory that the "king can do no wrong." *Steelman*, 279 N.C. at 592, 184 S.E.2d at 242. As such, entities representing the English monarchy could not be held liable for damages to its subjects. *Id.* In the modern day context, sovereign immunity extricates agencies and arms of the state from liability when state officials exercise discretionary authority for public benefit. *Lewis*, 287 N.C. at 643, 216 S.E.2d at 146. Sovereign immunity is not a monolithic bar to tort liability, as exceptions to this form of immunity exist. *See Golden Rule*, 113 N.C. App. at 193, 439 S.E.2d at 603 (discussing consent and waiver as exceptions to sovereign immunity).

The public official immunity doctrine "proscribes, among [other things], 'suits to prevent a State officer or Commission from performing official duties or to control the exercise of judgment on the part of State officers or agencies.' " *Golden Rule*, 113 N.C. App. at 193, 439 S.E.2d at 602-03 (quoting *Smith v. State*, 289 N.C. 303, 310, 222 S.E.2d 412, 417 (1976)). If governmental officials were constantly exposed to the threat of personal liability at the hands of disgruntled or damaged citizens, the basis of our democracy might well be jeopardized. The historic rule in this state has been that:

> "As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office [*viz.*, a medical examiner], keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability."

*Golden Rule*, 113 N.C. App. at 194, 439 S.E.2d at 603 (quoting *Smith*, 289 N.C. at 331, 222 S.E.2d at 430). The exceptions to official immunity have expanded over the years, with bad faith and willful and deliberate conduct now operating as additional common law bases for liability. *Reid v. Roberts*, 112 N.C. App. 222, 224, 435 S.E.2d 116, 119, *disc. review denied*, 335 N.C. 559, 439 S.E.2d 151 (1993); *see Dickens*, 110 N.C. App. at 44-45, 429 S.E.2d at 179-80 (1993); and *Wiggins v. City of Monroe*, 73 N.C. App. 44, 49, 326 S.E.2d 39, 43 (1985).

The official immunity doctrine is deceptively simple. Actual prosecution of a tort claim against a public official, though, reveals the complex nature of the doctrine. The tort must arise from some action taken while the tortfeasor-public official is acting under color of state authority. *Carpenter*, 184 N.C. at 404, 114 S.E. at 695. The complainor must decide whether to sue the public official in his official capacity, in his personal/individual capacity, or both. *See Golden Rule*, 113 N.C. App. at 193-94, 439 S.E.2d at 603. Assuming a plaintiff asserts a well-pleaded claim against the public officer in both official and individual capacities, the doctrine of governmental (or official) immunity interposes several barriers to liability. *Id.*

First, the official capacity suit will be tenable only if the State consents to the suit, or a statutory waiver of immunity applies. *Id.*; *Messick v. Catawba County*, 110 N.C. App. 707, 714, 431 S.E.2d 489, 493-94, *disc. review denied*, 334 N.C. 621, 435 S.E.2d 336 (1993). Otherwise, sovereign or official immunity is an absolute bar, and the case is subject to dismissal. *Golden Rule*, 113 N.C. App. at 193, 439 S.E.2d at 603. Whether or not the official capacity suit moves forward, the plaintiff may simultaneously proceed against the official as an individual, but only in limited circumstances. *Locus*, 102 N.C. App. at 526, 402 S.E.2d at 865.

In *Locus*, this Court held that, while "named defendants may be shielded from liability in their official capacities, they remain *personally* liable for any actions which may have been corrupt, malicious or perpetrated outside and beyond the scope of official duties." *Locus*, 102 N.C. App. at 526, 402 S.E.2d at 865 (this is essentially the same rule espoused in *Lewis*, *et alia*, and *Golden Rule*, *et alia*, enumerated *supra*). Official immunity " 'does not extend to the individuals [acting in an official capacity] who in disregard of law invade or threaten to invade the personal or property rights of a citizen even though they assume to act under the authority of the State.' " *Williamston*, 236

N.C. at 275, 72 S.E.2d at 609 (quoting *Teer*, 232 N.C. at 51, 59 S.E.2d at 362).

Prosecution of the tort suit against the official rests on a procedural legal fiction. The personal or individual capacity suit is against an official, for an act presumably done by that official, under color of official authority. "The distinction between official-capacity suits and personal-capacity suits is more than 'a mere pleading device.' " *Hafer v. Melo*, 502 U.S. 21, 27, 116 L.Ed.2d 301, 310 (1991) (quoting *Will v. Michigan Dept. of St. Police*, 491 U.S. 58, 71, 105 L.Ed.2d 45, 58 (1989) (cited as authority in *Corum v. University of North Carolina*, 330 N.C. 761, 772, 413 S.E.2d 276, 283 (1992)). "State officers sued for damages . . . assume the identity of the government that employs them. By contrast, officers sued in their personal capacity *come to court as individuals.*" *Hafer*, 502 U.S. at 27, 116 L.Ed.2d at 310 (emphasis added).

To sustain the personal or individual capacity suit, the plaintiff must initially make a *prima facie* showing that the defendant-official's tortious conduct falls within one of the immunity exceptions, *i.e.*, that the official's conduct is malicious, corrupt, or outside the scope of official authority. *Locus*, 102 N.C. App. at 526, 402 S.E.2d at 865. Once the plaintiff makes out its *prima facie* case that an exception applies, "[o]fficers who seek to defend an action on the ground of sovereign immunity must show they are acting within the scope of their authority." *Lewis*, 287 N.C. at 644, 216 S.E.2d at 146 (citing *Schloss*, 230 N.C. at 492, 53 S.E.2d at 519).

The defendant must assert official immunity as an affirmative defense, because

he is the actor, and hence he must establish his allegations in such matters by the same degree of proof as would be required if he were plaintiff . . . . This is not a shifting of the burden of proof; it simply means that each party must establish his own case.

*Speas v. Bank*, 188 N.C. 524, 531, 125 S.E. 398, 402 (1924); and *see* 1 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 32 n.29, at 120 (4th ed. 1993).

If the defendant cannot meet this burden of production, "he is not entitled to protection on account of his office, *but is liable for his acts like any private individual.*" *Gurganious*, 213 N.C. at 616, 197 S.E. at 164 (emphasis added); *see Locus*, 102 N.C. App. at 526, 402 S.E.2d at 865. The public official "stands, then, stripped of his official

character, and confessing a personal violation of the plaintiff's rights, for which he must personally answer, he is without defense." *Carpenter*, 184 N.C. at 405, 114 S.E. at 695. In essence, it is as if the *official* never committed the tortious act, as once stripped of the cloak of office, the tortfeasor is then liable for simple negligence. The "former official," now a mere individual, is subject to the standard liabilities of a tortfeasor, and must defend accordingly.

The foregoing restates the law of official immunity as established by our Supreme Court. However, in the 1990's, this Court began to propound a line of cases containing language which could be construed as at odds with Supreme Court precedent. Particularly, we refer to *Hare v. Butler*, 99 N.C. App. 693, 700, 394 S.E.2d 231, 236, *disc. review denied*, 327 N.C. 634, 399 S.E.2d 121 (1990), wherein this Court commented: "A public officer sued individually is normally immune from liability for 'mere negligence.' " *Id.* (quoting *Harwood v. Johnson*, 92 N.C. App. 306, 309, 374 S.E.2d 401, 404 (1988)).

This "mere negligence" statement from *Hare* has been cited *in toto* or paraphrased by this Court in subsequent cases, including: *Cherry v. Harris*, 110 N.C. App. 478, 480, 429 S.E.2d 771, 772, *disc. review denied*, 335 N.C. 171, 436 S.E.2d 371 (1993); *Reid*, 112 N.C. App. at 224, 435 S.E.2d at 119; and *Epps* I, 116 N.C. App. at 309, 447 S.E.2d at 447. In a vacuum, the *Hare* Court's "mere negligence" statement could be read to infer that an official *qua* individual may not be held liable for simple negligence. Our analysis of the precise holding in *Hare* indicates the Court intended to act and, in fact, acted in accordance with the rule espoused by our Supreme Court in *Lewis*, *Carpenter* and *Gurganious*.

Close scrutiny of the analysis in *Hare*, and subsequent cases employing *Hare*'s language, compels us to conclude that this Court's comment "[a] public officer sued individually is normally immune from liability for 'mere negligence,' " was never intended to operate as a substantive revision of the historical official immunity rule. *Hare*, 99 N.C. App. at 700, 394 S.E.2d at 236. We read the *Hare* statement only as a truncated, or "shorthand" version of the official immunity doctrine. We acknowledge the statement is, on its face, an ambiguous explication of the rule.

In an "as applied" context, it is *absque dubio* that the *Hare*, *Cherry*, *Reid*, and *Epps* I Courts employed the official immunity doctrine in a manner consistent with Supreme Court precedent. When so considered, it is patent that the meaning intended by this Court was

the following: a public official sued individually is not liable for "mere negligence"—because such negligence *standing alone*, is insufficient to support the "piercing" (hereinafter, the "piercing" exceptions) of the cloak of official immunity. *Locus*, 102 N.C. App. at 526, 402 S.E.2d at 865; *Reid*, 112 N.C. App. at 224, 435 S.E.2d at 119.

Once stripped of the "cloak" of office, the public official *qua* individual is undoubtedly liable just like any other private individual. This we have already established. *Gurganious*, 213 N.C. at 616, 197 S.E. at 164; *Carpenter*, 184 N.C. at 405, 114 S.E. at 695. But, if a plaintiff wishes to sue a public official in his personal or individual capacity, the plaintiff must, at the pleading stage and thereafter, demonstrate that the official's actions (under color of authority) are commensurate with one of the "piercing" exceptions.

The plaintiff may not *just* allege negligent behavior and expect his personal capacity action to survive. Our recent holding in *Whitaker v. Clark*, 109 N.C. App. 379, 383-84, 427 S.E.2d 142, 145, *disc. review denied and cert. denied*, 333 N.C. 795, 431 S.E.2d 31 (1993), makes exactly this point:

> Absent any allegations in the complaint [or an adequate later showing] *separate and apart* from official [actions] which would hold a nonofficial liable for negligence, the complaint cannot be found to sufficiently state a claim against defendants individually.

(Emphasis added.) This paragraph from *Whitaker* means that the first order of business for a plaintiff bringing an individual capacity suit against an official is a showing of an applicable "piercing" exception. Mere allegations of negligence, in and of themselves, will not suffice. For instance, in *Thompson Cadillac v. Silk Hope Auto*, the Court held that the plaintiff had

> alleg[ed] nothing more than mere negligence. There [were] no allegations of corrupt or malicious actions, actions outside the scope of defendants' duties . . . .
>
> \* \* \* \*
>
> . . . Accordingly, we find [defendant] to be a public officer, and we hold that the complaint alleging mere negligence fails to state a claim against [the public officer] . . . .

*Thompson*, 87 N.C. App. 467, 469-70, 361 S.E.2d 418, 420 (1987), *disc. review denied*, 321 N.C. 480, 364 S.E.2d 672 (1988).

The qualitative difference between the "mere negligence" language used in *Hare*, and the more illuminative but similar language in *Whitaker* and *Thompson*, is *de minimis*. When read in the context of *Whitaker* and *Thompson*, the statements in *Hare* are quite understandable and are well within the confines of our historical official immunity rule.

The public officer under discussion in *Hare* was Edwin Chapin, the Director of Mecklenburg County's Department of Social Services. *Hare*, 99 N.C. App. at 700, 394 S.E.2d at 234. The *Hare* defendants moved to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (1990). The *Hare* Court determined that the plaintiff's complaint alleged *only negligence* against Chapin (the plaintiff did not allege that Chapin's acts exceeded the scope of his authority, or any other piercing exception). Because the *Hare* plaintiff failed to allege that Chapin had committed a tortious act, performed under color of his authority, that fell within one of the exceptions rendering an official liable individually or personally, "Mr. Chapin [was held] immune from the negligence claim brought against him in his individual capacity." *Hare*, 99 N.C. App. at 701, 394 S.E.2d at 234.

Then, in *Cherry*, 110 N.C. App. at 480, 429 S.E.2d at 772, this Court assessed the sufficiency of the plaintiff's pleadings (the *Cherry* plaintiff appealed from defendant's successful motion to dismiss) as to whether the plaintiff had properly stated a personal or individual claim against a government official. In its discussion of the official immunity doctrine, the *Cherry* Court quoted the *Hare* "mere negligence" language above. *Cherry*, 110 N.C. App. at 480, 429 S.E.2d at 772. The reason the *Cherry* Court denied the plaintiff's attempt to pierce defendant's cloak of official immunity was because

> [t]he [plaintiff's] materials before the trial court additionally tended to show that defendant acted in *good faith* and *within the scope* of his responsibilities . . . . Furthermore, there is no allegation, and we find no evidence that defendant acted with any *ill will or malice* toward [plaintiff]. We therefore find that defendant is entitled to the immunity afforded a public official.

*Cherry*, 110 N.C. App. at 481-82, 429 S.E.2d at 773 (emphasis added).

Thus, while the *Cherry* Court ostensibly followed *Hare*'s mere negligence "shorthand" language, its analysis mirrored *Thompson* in its application of the piercing concept. For all intents and purposes, the "mere negligence" language from *Hare* has become an alter ego

for the concept applied in *Thompson* and *Whitaker*. We are of the view that *Hare*, and the cases utilizing the *Hare* language, comport with those cases utilizing *Thompson*-style language, and are not contrary statements of our official immunity doctrine.

For instance, in 1993, the *Reid* Court quoted *Hare*'s "mere negligence" passage *in toto*, and paraphrased its gist as follows: "The defendants who are public officers, rather than employees, cannot be held individually liable for mere negligence." *Reid*, 112 N.C. App. at 224, 435 S.E.2d at 119. In *Reid*, this Court determined the plaintiff's pleadings were insufficient to withstand a motion to dismiss, because the plaintiff's allegations did not state a piercing exception applicable to the defendants, and the plaintiff's allegations were only equivalent to simple negligence. *See Reid*, 112 N.C. App. at 225-26, 435 S.E.2d at 119-20.

Then in *Epps* I, this Court repeated the *Hare* "shorthand": "[I]f a public officer is sued in his individual capacity, he is entitled to immunity for actions constituting mere negligence, *Cherry*, 110 N.C. App. at 480, 429 S.E.2d at [772]." *Epps* I, 116 N.C. App. at 309, 447 S.E.2d at 447. Once again, while *citing* the *Hare* comment, the *Epps* I Court reviewed the sufficiency of the plaintiffs' pleadings against defendant Hjelmstad in his individual capacity. In doing so, the *Epps* I Court employed (without attribution) the same form of analysis applied in *Thompson* and *Whitaker*, not the facially inconsistent standard implied by *Hare*. *Epps* I, 116 N.C. App. at 309-10, 447 S.E.2d at 447-48.

The *Epps* I Court held

> that plaintiffs did not contend malice or corruption on the part of Hjelmstad in ordering the autopsy, plaintiffs did include allegations in the complaint indicating that Hjelmstad and the other defendants exceeded the permissible scope of the autopsy.

*Epps* I, 116 N.C. App. at 310, 447 S.E.2d at 448. Since plaintiffs had properly alleged that defendant Hjelmstad's autopsy exceeded the scope of his authority (and thus demonstrated a piercing exception), the Court denied the defendant's motion to dismiss. *Id.*

[3] We now turn to the instant summary judgment analysis. In *Gurganious*, the Supreme Court addressed a case whose factual context and procedural posture were strikingly similar to the instant one. The *Gurganious* Court expressly held that a county coroner and physicians performing an autopsy under the coroner's direction may be held liable for the wrongful mutilation of a cadaver. *Gurganious*,

213 N.C. at 614, 197 S.E.2d at 163. The *Gurganious* Court observed the applicability of official immunity to the facts before it, and held:

> It follows that an unauthorized autopsy to determine the cause of death where foul play is not suspected, though ordered by the coroner under color of his office, is in violation of the rights of the next of kin of the deceased, and *that the coroner is not protected by the official capacity in which he purports to act.* The duty to ascertain the limits of his authority and to observe the law, particularly where the rights of others were affected, was incumbent upon this defendant.

> The *general rule* is that when an officer goes outside the scope of his duty he is not entitled to protection on account of his office, *but is liable for his acts like any private individual.* 46 C.J., 1043; *Moffitt v. Davis*, 205 N.C., 565, 172 S.E., 317; *Coty v. Baughman*, 50 S.D., 372; 48 A.L.R., 1205; 52 A.L.R., 1447.

*Gurganious*, 213 N.C. at 616, 197 S.E.2d at 164 (emphasis added).

Given the clarity of the rule in *Gurganious* (and the other Supreme Court cases discussing official immunity), and the identicality of the facts between *Gurganious* and the instant matter, we are compelled to apply the Supreme Court's version of the official immunity rule to our summary judgment analysis here. The remaining question is singular. Have the instant plaintiffs set forth, in their opposition to summary judgment, evidence tending to show that defendant Hjelmstad performed his duties in a fashion exposing him to liability under the tenets of *Lewis, Gurganious, Carpenter, et alia*? The answer to this question is manifestly yes.

For instance, the affidavit, in the record, of Richard Page Hudson, M.D. (formerly Chief Medical Examiner for the State of North Carolina) unequivocally states: "It is my opinion that the autopsy which was performed on Dora Epps McNair at Duke University Medical Center went far beyond the scope of a medical examiner autopsy." More particularly, Dr. Hudson explained exactly what aspects of the autopsy were beyond the scope of a medical examiner's duties. His affidavit states, in part:

> 9. In my opinion, there was no reason to believe that study of the eyes would contribute to the determination of the cause or manner of Mrs. McNair's death, or provide evidence within the scope of the medical examiner's responsibilities.

10. In my opinion, it was a departure from the standard of care for the persons performing the medical examiner autopsy on the body of Mrs. McNair to remove the eyes from her body.

\* \* \* \*

12. In my opinion, there was no reason to believe that study of the spinal vertebral and spinal cord would contribute to the determination of the cause or manner of Mrs. McNair's death, or provide evidence within the scope of the medical examiner's responsibilities.

13. In my opinion, it was a departure from the standard of care for the persons performing the medical examiner autopsy on the body of Mrs. McNair to remove the spinal vertebrae and spinal cord from her body.

(Emphasis added.)

We also acknowledge the affidavit of Mr. D.W. Richardson, a licensed funeral director and embalmer. In Mr. Richardson's affidavit, he describes from his personal observation of decedent's cadaver and his professional experience that: "The mutilation of Mrs. McNair's body went far beyond what I have seen in other medical examiner or hospital autopsies performed to determine cause of death." Defendant Hjelmstad's affidavit describes decedent's cause of death as "a result of coronary vasospasm caused by the cardiac catheterization." Defendant's affidavit described all the "procedures performed [as] necessary and appropriate components of a complete autopsy examination." Quite simply, defendant Hjelmstad's affidavit cannot meaningfully co-exist with the affidavits of Dr. Hudson and Mr. Richardson. Either removal of eyeballs and a spinal cord is within the scope of an autopsy into a death from decedent's cardiac trauma, or it is not.

Under our standards for summary judgment, defendant's motion is patently without merit. Material facts are in dispute, as the affidavits make evident. As the affidavits presented by plaintiffs mirror the allegations in their complaint (i.e., that the autopsy exceeded defendant's scope of authority), defendant is not entitled to judgment as a matter of law. Accordingly, we affirm the trial court's denial of summary judgment against defendant Hjelmstad.

Affirmed.

Judges JOHNSON and WALKER concur.