TYSON, Judge.
 

 *32
 
 Shon F. Barnes (Shawn F. Barnes) ("Defendant") appeals from order denying his motion for summary judgment. We affirm in part, reverse in part, and remand.
 

 I. Factual Background
 

 Greensboro Police Department Captain Shon F. Barnes arrested Plaintiff on 31 January 2014 for felony possession and intent to sell and deliver cocaine, maintaining dwelling for controlled substances, and possession of drug paraphernalia. Plaintiff's arrest occurred after a raid of premises located at 310 West Meadowview Street ("Heritage House"), a privately-owned, multi-unit apartment building. More than thirty individuals owned, maintained, and rented their respective apartments in Heritage House. The common areas were maintained by a homeowner's association ("HOA"). Plaintiff's father owned twenty units located within Heritage House, which Plaintiff managed. Plaintiff maintained an office on the third floor of Heritage House and visited the property on a regular basis.
 

 The Greensboro Police Department ("GDP") designated the neighborhood surrounding Heritage House to be a "district crime priority, with
 
 *33
 
 drug sales and social disorder as the underlying cause of the problem." This designation was implemented after 865 calls for police response concerning incidents occurring near Heritage House were received within one year. Many of these calls involved illegal drug sales.
 

 GDP officers met with Heritage House unit owners upon multiple occasions and requested the owners consider changing their rental policies to reduce crime. Landlords were asked to submit a list of their tenants to the HOA. The GDP also requested that homeowners require all adult guests and visitors to present photo identification at the front desk or when they were approached by a police officer on the grounds. Plaintiff was present for at least one of these meetings.
 

 On 31 January 2014, the GDP conducted a raid on Heritage House involving approximately 65 law enforcement officers and executed search warrants on five different units, including unit 308 managed by Plaintiff. Plaintiff arrived at the unit shortly after the raid began. The search of unit 308 yielded 25 dosage units of crack cocaine, various drug paraphernalia, and a significant quantity of cash found inside a hat. None of these items were tied or connected directly to Plaintiff.
 

 No one was present inside unit 308 at the time the search occurred and the unit was found to be in uninhabitable condition. Another officer informed Defendant the unit was vacant. Defendant questioned Plaintiff about unit 308 prior to arresting him. Defendant's affidavit stated Plaintiff never informed Defendant that documents showing the identity of the renter of unit 308 were available and Plaintiff was unable to name any tenant or occupant living there.
 

 A. Defendant's Affidavit
 

 Defendant's affidavit stated he was aware of Plaintiff's previous convictions for drug related offenses, and that Plaintiff had failed to make good faith efforts to stop the use of his father's units for drug dealing and prostitution. Defendant also believed Plaintiff was personally engaged in drug activity and
 
 *548
 
 was a member of the Bloods criminal gang. Defendant alleged his belief upon Plaintiff's tendency to wear red and black clothing, indicative of membership in the Bloods. Defendant also alleged that North Carolina Department of Corrections ("DOC") records indicated DOC personnel had confirmed Plaintiff's membership in the Bloods gang, while Defendant was incarcerated. Defendant also asserted Plaintiff had previously impeded police officers by intervening on behalf of tenants occupying his units, and by refusing to cooperate with officers or by providing information concerning criminal investigations.
 
 *34
 
 Based upon his previous knowledge of Plaintiff and the results of the search and seizure of contraband from unit 308, Defendant instructed an officer to call the magistrate and request a finding of probable cause to arrest Plaintiff. The magistrate found probable cause and issued an order for Plaintiff's arrest. Plaintiff was handcuffed and transported to the Guilford County Jail. Defendant's affidavit claims Plaintiff was cooperative and no force was needed to detain or arrest him.
 

 B. Plaintiff's Affidavit
 

 Plaintiff denies many of the statements contained in Defendant's affidavits. Plaintiff submitted an affidavit to deny Defendant's allegations and to "correct some of the false statements" made in the Defendant's affidavits. In particular, Plaintiff alleges he possessed lease records for unit 308 and offered to retrieve them for Defendant when he was questioned about tenants of the unit, but Defendant had refused Plaintiff's request to retrieve that information.
 

 Plaintiff also denied statements in both the HOA's president's and landlord's affidavits, which asserted Plaintiff was "always in a hurry to go upstairs" and appeared to be sneaking into the building. Plaintiff counters he had no reason to sneak into the building and was present at Heritage House between four and five times a week to manage the twenty units his father owned.
 

 Plaintiff's affidavit claims he cooperated with the HOA's requests to provide a complete tenant list, and had worked to make Heritage House "a better place." Plaintiff felt harassed by police officers, who patrolled Heritage House. Plaintiff was constantly required to present photo identification, even though the officers knew his identity and that he managed several of the Heritage House units. Plaintiff asserted he was not concerned about being searched by officers patrolling Heritage House, but believed on several occasions the officers would have attempted to search him in violation of his rights. He tried to limit his engagements with the officers.
 

 Plaintiff denies any affiliation with gang activity. Plaintiff states he never wore gang colors or insignias. While incarcerated by the DOC, he never was accused of or participated in any gang activity.
 

 Plaintiff also asserts the magistrate appeared unwilling to issue a criminal warrant when Plaintiff was brought before him for the criminal charges at issue. The magistrate questioned the GDP officers on "whether this was the right thing to do" since Plaintiff only managed the apartment and was not either the owner or the tenant of unit 308.
 

 *35
 
 The charges against Plaintiff were ultimately dismissed by the Guilford County District Attorney on 16 September 2014. On 21 January 2015, Plaintiff filed this complaint against Defendant. Plaintiff asserted claims against Defendant, in both his official and individual capacities, for the following: (1) assault and battery, (2) false arrest and false imprisonment, and (3) malicious prosecution. Plaintiff sought punitive damages for all three claims "[b]ecause defendant acted with actual malice in the sense of personal ill will, and acted with conscious and intentional disregard to plaintiff's rights, which he knew was reasonably likely to result in injury."
 

 On 24 February 2015, Defendant answered Plaintiff's complaint and filed a Rule 12(b)(6) motion to dismiss. Defendant alleged he was entitled to the defenses of governmental immunity, public official immunity, necessity, and probable cause. Defendant filed a subsequent motion for summary judgment on 8 September 2015.
 

 The trial court heard Defendant's motion for summary judgment in October 2015. Prior
 
 *549
 
 to ruling, the trial court considered six affidavits, the pleadings, legal authority submitted by each party, and arguments of counsel. The trial court concluded Defendant's motion for summary judgment "should be denied as there are genuine issues of material fact and [defendant is] not entitled to judgment as a matter of law." Defendant appeals.
 

 II. Issues
 

 Defendant argues the trial court erred by denying his motion for summary judgment asserting affirmative defenses of governmental immunity and public official immunity.
 

 III. Standard of Review
 

 Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015) ;
 
 see
 

 Draughon v. Harnett Cnty. Bd. of Educ.,
 

 158 N.C.App. 208
 
 , 212,
 
 580 S.E.2d 732
 
 , 735 (2003) (citation omitted),
 
 aff'd per curium,
 

 358 N.C. 131
 
 ,
 
 591 S.E.2d 521
 
 (2004).
 

 In reviewing a motion for summary judgment, the trial court must "view the pleadings and all other evidence in the record in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor."
 
 N.C. Farm Bureau Mut. Ins. Co. v. Sadler
 
 ,
 
 365 N.C. 178
 
 , 182,
 
 711 S.E.2d 114
 
 , 117 (2011) (citation omitted).
 

 *36
 
 An issue is "genuine" if it can be proven by substantial evidence and a fact is "material" if it would constitute or irrevocably establish any material element of a claim or a defense.
 

 A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim. Generally this means that on undisputed aspects of the opposing evidential forecast, where there is no genuine issue of fact, the moving party is entitled to judgment as a matter of law. If the moving party meets this burden, the non-moving party must in turn either show that a genuine issue of material fact exists for trial or must provide an excuse for not doing so.
 

 Lowe v. Bradford,
 

 305 N.C. 366
 
 , 369,
 
 289 S.E.2d 363
 
 , 366 (1982) (citations and internal quotation marks omitted). This Court reviews a trial court's summary judgment order
 
 de novo
 
 .
 
 Sturgill v. Ashe Mem'l Hosp., Inc.,
 

 186 N.C.App. 624
 
 , 626,
 
 652 S.E.2d 302
 
 , 304 (2007),
 
 disc. review denied,
 

 362 N.C. 180
 
 ,
 
 658 S.E.2d 662
 
 (2008).
 

 IV. Analysis
 

 A. Jurisdiction
 

 Generally, "the denial of a motion for summary judgment is a nonappealable interlocutory order."
 
 Northwestern Fin. Grp. v. Cnty. of Gaston,
 

 110 N.C.App. 531
 
 , 535,
 
 430 S.E.2d 689
 
 , 692 (citation omitted),
 
 disc. review denied,
 

 334 N.C. 621
 
 ,
 
 435 S.E.2d 337
 
 (1993). This Court will only address the merits of such an appeal if "a substantial right of one of the parties would be lost if the appeal were not heard prior to the final judgment."
 
 Id
 
 .
 

 Well-settled precedents hold "[o]rders denying dispositive motions based on the defenses of governmental and public official's immunity affect a substantial right and are immediately appealable."
 
 Thompson v. Town of Dallas,
 

 142 N.C.App. 651
 
 , 653,
 
 543 S.E.2d 901
 
 , 903 (2001) (citing
 
 Corum v. Univ. of North Carolina,
 

 97 N.C.App. 527
 
 ,
 
 389 S.E.2d 596
 
 (1990) ),
 
 aff'd in part, reversed in part, and remanded,
 

 330 N.C. 761
 
 ,
 
 413 S.E.2d 276
 
 ,
 
 reh'g denied,
 

 331 N.C. 558
 
 ,
 
 418 S.E.2d 664
 
 (1992). This Court allows interlocutory appeals of orders denying motions based on these defenses because "the essence of absolute immunity is its possessor's
 
 *37
 
 entitlement not to have to answer for his conduct in a civil damages action."
 
 Epps v. Duke Univ., Inc.,
 

 122 N.C.App. 198
 
 , 201,
 
 468 S.E.2d 846
 
 , 849 (citations and internal quotation marks omitted),
 
 disc. review denied,
 

 344 N.C. 436
 
 ,
 
 476 S.E.2d 115
 
 (1996). Defendant's appeal is properly before this Court.
 

 Id.
 

 *550
 

 B. Governmental Immunity
 

 "In North Carolina, governmental immunity serves to protect a municipality, as well as its
 
 officers or employees who are sued in their official capacity
 
 , from suits arising from torts committed while the officers or employees are performing a governmental function."
 
 Schlossberg v. Goins
 
 ,
 
 141 N.C.App. 436
 
 , 439,
 
 540 S.E.2d 49
 
 , 52 (2000) (emphasis supplied). Governmental immunity is "absolute unless the City has consented to [suit] or otherwise waived its right to immunity."
 
 Id
 
 . at 440,
 
 540 S.E.2d at 52
 
 .
 

 In order to "overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity. Absent such an allegation, the complaint fails to state a cause of action."
 
 Paquette v. Cnty. of Durham,
 

 155 N.C.App. 415
 
 , 418,
 
 573 S.E.2d 715
 
 , 717 (2002) (internal citations omitted),
 
 disc. review denied
 
 ,
 
 357 N.C. 165
 
 ,
 
 580 S.E.2d 695
 
 (2003). No particular language is required to allege a waiver of governmental immunity, but the complaint must "allege facts that, if taken as true, are sufficient to establish a waiver by the State of [governmental] immunity."
 
 Green v. Kearney,
 

 203 N.C.App. 260
 
 , 268,
 
 690 S.E.2d 755
 
 , 762 (2010) (internal quotation marks and citation omitted).
 

 Here, Plaintiff questions why Defendant raises governmental immunity in its brief "since neither the City of Greensboro nor any other governmental unit was sued in this case, and no issue of governmental immunity arises." A defendant's assertion of governmental immunity not only protects a municipality, but also "its officers or employees who are sued in their official capacity."
 
 See
 

 Schlossberg
 
 ,
 
 141 N.C.App. at 439
 
 ,
 
 540 S.E.2d at 52
 
 .
 

 Plaintiff may have intended to sue Defendant only in his individual capacity, but Plaintiff's complaint sues Defendant both "[i]ndividually and in his Official Capacity as Captain of the Greensboro Police Department." Regarding the claim against Defendant in his official capacity, Plaintiff's complaint failed to specifically allege any waiver of governmental immunity. Defendant was entitled to entry of summary judgment on his affirmative defense of governmental immunity for Plaintiff's claims in his official capacity. In the absence of Plaintiff's allegation of waiver, the trial court should have granted Defendant's
 
 *38
 
 motion on this ground. That portion of the trial court's order judgment is reversed.
 

 C. Public Official Immunity
 

 The defense of public official immunity is a "derivative form" of governmental immunity.
 
 Epps,
 

 122 N.C.App. at 203
 
 ,
 
 468 S.E.2d at 850
 
 . Public official immunity precludes suits against public officials in their individual capacities and protects them from liability "[a]s long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption[.]"
 
 Smith v. State,
 

 289 N.C. 303
 
 , 331,
 
 222 S.E.2d 412
 
 , 430 (1976) (citation omitted). "Actions that are malicious, corrupt or outside of the scope of official duties will pierce the cloak of official immunity[.]"
 
 Moore v. Evans,
 

 124 N.C.App. 35
 
 , 42,
 
 476 S.E.2d 415
 
 , 421 (1996) (citations omitted).
 

 A malicious act is one which is: "(1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another."
 
 Wilcox v. City of Asheville,
 

 222 N.C.App. 285
 
 , 289,
 
 730 S.E.2d 226
 
 , 230 (2012),
 
 disc. review denied and appeal dismissed,
 

 366 N.C. 574
 
 ,
 
 738 S.E.2d 363
 
 (2013) ;
 
 see In re
 

 Grad v. Kaasa
 
 ,
 
 312 N.C. 310
 
 , 313,
 
 321 S.E.2d 888
 
 , 890 (1984) ("A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.").
 

 Absent evidence to the contrary, this Court presumes public officials "discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law."
 
 Strickland v. Hedrick
 
 ,
 
 194 N.C.App. 1
 
 , 10,
 
 669 S.E.2d 61
 
 , 68 (2008) (quoting
 
 Leete v. County of Warren,
 

 341 N.C. 116
 
 , 119,
 
 462 S.E.2d 476
 
 , 478 (1995) ). Any evidence presented to rebut this presumption "must be sufficient by virtue of its reasonableness,
 
 *551
 
 not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise."
 
 Id.
 
 at 11,
 
 669 S.E.2d at 68
 
 (quoting
 
 Dobson v. Harris,
 

 352 N.C. 77
 
 , 85,
 
 530 S.E.2d 829
 
 , 836 (2000) );
 
 see
 

 Vest v. Easley
 
 ,
 
 145 N.C.App. 70
 
 , 75,
 
 549 S.E.2d 568
 
 , 573 (2001) ("A mere allegation is not sufficient to overcome summary judgment.").
 

 In
 
 Strickland
 
 , this Court held where public officers adequately produced evidence of good faith supporting their motion for summary judgment, it "trigger[ed] the opposing party's responsibility to come forward with facts, as distinguished from allegations, sufficient to indicate he will be able to sustain his claim at trial."
 
 Strickland
 
 ,
 
 194 N.C.App. at 14
 
 ,
 
 669 S.E.2d at 70
 
 (internal quotation marks and citations omitted). The plaintiff in
 
 Strickland
 
 failed to produce such evidence.
 
 Id
 
 . Rather, the
 
 *39
 
 plaintiff's testimony "largely corroborated that of the [d]efendants" and "proffered no evidence of actions by these officers outside the scope of their employment, no evidence of corruption, and no evidence supporting their contention that the warrants were issued upon false testimony."
 
 Id
 
 . at 15,
 
 669 S.E.2d at 70
 
 . This Court emphasized the officers never met the plaintiffs and their interactions with the plaintiffs were limited to the night the incident occurred and routine police procedures following the incident.
 
 Id
 
 . at 13,
 
 669 S.E.2d at 69
 
 .
 

 Unlike in
 
 Strickland
 
 , Plaintiff's complaint and affidavit raise a genuine issue of material fact regarding whether Defendant acted with malice toward Plaintiff. Plaintiff's affidavit largely contradicts, not corroborates, the statements asserted in the affidavits produced by Defendant.
 
 See
 

 id.
 
 at 14,
 
 669 S.E.2d at 70
 
 . Plaintiff denies Defendant's statements that he refused to present Defendant with information regarding the lease for unit 308. He denies any allegation of gang-related activity and asserts Defendant produced no documentation from DOC tending to show Plaintiff's involvement in such activity.
 

 Plaintiff also denies not cooperating with and impeding the officers' investigations. He claims he had previously been harassed by officers and had simply made other tenants aware of their rights. Furthermore, Plaintiff asserts the magistrate questioned the officers' arrest and pursuit of charges against Plaintiff and who seemed unwilling to issue the warrant, and that all the charges were dismissed by the District Attorney. These sworn assertions almost wholly contradict statements in the affidavits produced by Defendant. While not determinative, and viewed in the light of the non-moving party, these assertions raise genuine issues of material fact and tend to show Defendant's actions against Plaintiff may have been improperly motivated.
 

 Also unlike in
 
 Strickland
 
 , Defendant and the other officers involved had previously interacted with Plaintiff on many occasions.
 
 Id
 
 . at 13,
 
 669 S.E.2d at 69
 
 . Defendant relied on his prior knowledge and reputation of Plaintiff, most of which Plaintiff asserts to be incorrect, to make the arrest. Again, this evidence tends to raise genuine issues of material fact regarding whether Defendant's actions against Plaintiff were improperly motivated by malice due to his previous interactions with Plaintiff.
 

 After considering the evidence presented in the pleadings, affidavits, and hearing arguments of counsel, the trial court found genuine issues of material fact existed regarding Plaintiff's tort claims against Defendant. Based upon our
 
 de novo
 
 review of the record and Defendant's burden on appeal to show error, the trial court properly denied Defendant's motion
 
 *40
 
 for summary judgment concerning Plaintiff's claims against Defendant in his individual capacity.
 

 V. Conclusion
 

 The trial court erred in denying Defendant's motion for summary judgment on the ground of governmental immunity. Plaintiff sued Defendant in his official capacity and failed to meet the pleading requirements of alleging waiver to overcome Defendant's claim of governmental immunity.
 

 The trial court did not err by denying Defendant's motion for summary judgment concerning Plaintiff's tort claims against Defendant in his individual capacity. Plaintiff's complaint and affidavit forecast triable issues of fact that exist on whether Defendant's actions were improperly motivated by malice.
 

 *552
 
 The order denying summary judgment appealed from is reversed in part, as it concerns Defendant's affirmative defense of governmental immunity. The order is affirmed in part, as it concerns Defendant's affirmative defense of public official immunity. This case is remanded for entry of judgment of dismissal on Defendant's affirmative defense of governmental immunity in his official capacity, and for further proceedings on Plaintiff's claims against Defendant in his individual capacity.
 

 AFFIRMED IN PART; REVERSED IN PART, AND REMANDED.
 

 Judges CALABRIA and DAVIS concur.