McCULLOUGH, Judge.
 

 *555
 
 Edward H. Pruden ("defendant") appeals from an order denying his motion to dismiss Baker A. Mitchell, Jr. ("Mitchell") and The Roger Bacon Academy, Inc.'s ("RBA") (collectively "plaintiffs") second amended complaint. For the reasons stated herein, we reverse the order of the trial court.
 

 I.
 
 Background
 

 On 6 January 2015, plaintiffs filed a complaint against defendant. On 13 January 2015, plaintiffs filed an amended complaint.
 

 On 15 July 2015, plaintiffs filed a second amended complaint alleging claims of libel
 
 per se
 
 , libel
 
 per quod
 
 , unfair and deceptive trade practices ("UDTP"), and punitive damages. The second amended complaint alleged as follows: Mitchell is the owner and manager of RBA, founded in 1999. RBA is a corporation, engaged in the organization, support, and operation of four public charter schools in southeast North Carolina: Charter Day School ("CDS"), Columbus Charter Schools, Douglass Academy, and South Brunswick Charter School. Defendant was Superintendent of Brunswick County Schools ("BCS") from 1 July 2010 until 30 November 2014. Defendant, acting outside of the scope of his employment as Superintendent, falsely stated to third parties that the public charter schools were "dismantling" North Carolina's public education system and that they have "morphed into an entrepreneurial opportunity." On 4 December 2013, a video entitled "Dr. Pruden Superintendent of the Year Video" was published on YouTube. In that video, defendant falsely stated that BCS was superior to the "competition" because BCS "does not operate schools for a profit." Plaintiffs alleged that defendant's reference to "competition" was "clearly a reference" to the public charter schools for children of Brunswick County.
 

 The second amended complaint further alleged as follows: In 2013, RBA submitted an application to the Office of Charter Schools for a new public charter school named "South Brunswick Charter School" ("SBCS"). Defendant began an "obsessive public campaign to derail approval" of the new school, "viciously defaming the character and reputation" of Mitchell. First, defendant submitted a "Local Education Agency Impact Statement" to the Office of Charter Schools on 9 April 2013
 
 *556
 
 and a revised impact statement ("impact statement") on 14 May 2013. At some time after 20 May 2013, defendant's impact statement was posted to a website maintained by the North Carolina Department of Public Instruction. Plaintiffs alleged that the impact
 
 *80
 
 statement contained statements that "maligns" plaintiffs and "casts aspersions on Mitchell's honesty, character and moral standing in the community[.]" Defendant also privately petitioned at least one member of the Charter School Advisory Council ("CSAC") to manipulate the approval process such that approval of the charter would be denied. The vice-chair of the CSAC, Tim Markley ("Markley"), "issued repeated challenges" to the SBCS. On 16 July 2013, a motion was made to approve the SBCS conditioned upon a change in the CDS Board. Markley met with defendant in the hall after the meeting and Markley was overheard expressing his regrets and apologizing for not being able to prevent approval of the SBCS charter.
 

 Plaintiffs alleged that defendant, acting in his individual capacity, began submission of "a parade of documents" to the North Carolina State Board of Education ("SBE"), including copies of defamatory letters written to Mr. Bill Cobey, chairman of the SBE, expressing false allegations and his concerns about what defendant claimed were conflicts of interest between Mitchell, RBA, and public charter schools. In a letter dated 7 August 2013 to Mr. Cobey and the SBE, defendant urged that the SBE consider information regarding conflicts of interest before taking action on the application for SBCS. Plaintiffs alleged that this letter contained statements which were "false, libelous and intended to impugn the ethical reputation and character of Mitchell" by stating as follows:
 

 As evidenced by the nature of the CSAC's final vote, which required two attempts to obtain a majority, there are many "red flags" surrounding [SBCS's] application and the apparent and multiple conflicts of interest surrounding the Roger Bacon Academy and Charter Day School's board of directors.
 

 Plaintiffs further alleged that in a letter dated 3 September 2013 to Mr. Cobey and the SBE, defendant, outside of the scope of his duties, formally requested a "delay granting preliminary approval to [SBCS] due to violations of North Carolina's Public Records Law and heightened conflict of interest concerns[.]" In a letter dated 4 November 2013 to Mr. Cobey and the SBE, defendant sought a response from the SBE regarding its investigation into the conflict of interest allegations raised by defendant. On 20 December 2013, Mr. Cobey responded to these letters informing defendant that "after careful review for actual and potential conflicts of interest, the [State Ethics] Commission has determined that
 
 *557
 
 Mr. Mitchell is eligible to serve on the CSAB [Charter School Advisory Board] and has not identified any actual conflicts of interest[.]" Plaintiffs alleged that in a 7 January 2014 letter, defendant "accosted" the SBE, encouraging the SBE to continue investigation of Mitchell, RBA, and CDS. Regarding all the letters, plaintiffs alleged that defendant had no information to support the false and defamatory statements, that his actions were outside the scope of his duties as Superintendent, and that they were only meant to further his personal campaign to maliciously defame plaintiffs.
 

 Plaintiffs alleged that although defendant knew the falsity of his statements, on 7 January 2014, defendant published the 7 August 2013, 3 September 2013, 4 November 2014, and 7 January 2014 letters to media outlets across southeast North Carolina. After the publication of defendant's false and defamatory statements, CDS and Douglass Academy saw a profound reduction in enrollment and RBA received a reduction in management fees. Plaintiffs alleged that defendant acted with actual malice, in his individual capacity, and outside the scope of his duties as Superintendent. Thus, they alleged that sovereign immunity did not apply or alternatively, that it was waived.
 

 On 6 November 2015, defendant filed a motion to dismiss plaintiffs' second amended complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Defendant argued that his statements were made in his official capacity, on behalf of the Brunswick County Board of Education. Defendant claimed plaintiffs failed to plead waiver of sovereign/governmental immunity with the required specificity. Furthermore, defendant argued that plaintiffs' claims were barred by the doctrine of sovereign/governmental immunity, public official immunity, and judicial or quasi-judicial immunity. As to
 
 *81
 
 the claims of libel
 
 per se
 
 and libel
 
 per quod
 
 , defendant argued that the claims failed because the statements at issue were not "of and concerning" plaintiffs, not defamatory as a matter of law, and not false. Defendant also argued that plaintiffs' claims were barred by the applicable statute of limitations,
 
 N.C. Gen. Stat. § 1-54
 
 , as all but one of the statements at issue was published more than a year before the complaint was filed. Defendant contended that the UDTP claim failed because the underlying claims for libel failed to state a claim for relief and that Chapter 75 of the North Carolina General Statutes does not create a cause of action against an agency or subdivision of the State. Defendant argued that he was entitled to reasonable attorneys' fees because plaintiffs knew, or should have known, this action was frivolous and malicious. Lastly, defendant contended that plaintiffs' claims were barred by the protections of the
 
 *558
 
 First Amendment to the United States Constitution and Article I, Section 14 of the North Carolina Constitution.
 

 Following a hearing held on 17 November 2015, the trial court entered an order on 20 January 2016, denying defendant's Rule 12(b)(6) motion and defendant's oral Rule 12(b)(1) motion to dismiss. Defendant appeals from this order.
 

 II.
 
 Discussion
 

 The sole issue on appeal is whether the trial court erred by denying defendant's motion to dismiss plaintiffs' second amended complaint. Defendant argues that he is entitled to quasi-judicial immunity, public official immunity, and governmental immunity.
 

 Defendant's appeal from a denial of a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) is interlocutory.
 
 See
 

 Bolton Corp. v. T.A. Loving Co.
 
 ,
 
 317 N.C. 623
 
 , 629,
 
 347 S.E.2d 369
 
 , 373 (1986). However, "this Court has repeatedly held that appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review."
 
 Hines v. Yates
 
 ,
 
 171 N.C.App. 150
 
 , 156,
 
 614 S.E.2d 385
 
 , 389 (2005). Also, rulings "denying dispositive motions based on [a] public official's immunity affect a substantial right and are immediately appealable."
 
 Summey v. Barker
 
 ,
 
 142 N.C.App. 688
 
 , 689,
 
 544 S.E.2d 262
 
 , 264 (2001). Because defendant's motion to dismiss and arguments assert the affirmative defenses of governmental immunity, public official immunity, and judicial/quasi-judicial immunity, we hold that this appeal is properly before our Court.
 

 On appeal from a motion to dismiss under Rule 12(b)(6), this Court reviews
 
 de novo
 
 "whether, as a matter of law, the allegations of the complaint ... are sufficient to state a claim upon which relief may be granted[.]" We consider the allegations in the complaint true, construe the complaint liberally, and only reverse the trial court's denial of a motion to dismiss if plaintiff is entitled to no relief under any set of facts which could be proven in support of the claim.
 

 Green v. Kearney
 
 ,
 
 203 N.C.App. 260
 
 , 266-67,
 
 690 S.E.2d 755
 
 , 761 (2010) (citation omitted). "Although well-pleaded factual allegations of the complaint are treated as true for purposes of a 12(b)(6) motion, conclusions of law or unwarranted deductions of facts are not admitted."
 
 Dalenko v. Wake County Dep't of Human Servs.
 
 ,
 
 157 N.C.App. 49
 
 , 56,
 
 578 S.E.2d 599
 
 , 604 (2003) (internal quotation marks and citation omitted).
 

 *559
 
 A complaint is not sufficient to withstand a motion to dismiss if an insurmountable bar to recovery appears on the face of the complaint. Such an insurmountable bar may consist of an absence of law to support a claim, an absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim.
 

 Al-Hourani v. Ashley
 
 ,
 
 126 N.C.App. 519
 
 , 521,
 
 485 S.E.2d 887
 
 , 889 (1997) (internal citations omitted).
 

 First, we consider whether the trial court erred by denying defendant's motion to dismiss under the doctrine of public official immunity.
 

 "A public official is one who exercises some portion of sovereign power and discretion, whereas public employees perform ministerial duties."
 
 Dalenko
 
 ,
 
 157 N.C.App. at 55
 
 ,
 
 578 S.E.2d at 603
 
 (citation
 
 *82
 
 omitted). "Clearly, the superintendent of a school system must perform discretionary acts requiring personal deliberation, decision and judgment."
 
 Gunter v. Anders
 
 ,
 
 114 N.C.App. 61
 
 , 67,
 
 441 S.E.2d 167
 
 , 171 (1994). Therefore, defendant, as the superintendent of BCS from 1 July 2010 until 30 November 2014, was a public officer for purposes of immunity.
 

 The defense of public official immunity is a "derivative form" of governmental immunity. Public official immunity precludes suits against public officials in their individual capacities and protects them from liability "[a]s long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption[.]"
 

 Fullwood v. Barnes
 
 , --- N.C. App. ----, ----,
 
 792 S.E.2d 545
 
 , 550 (2016) (internal citations omitted). "Thus, a public official is immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt."
 
 Wilcox v. City of Asheville
 
 ,
 
 222 N.C.App. 285
 
 , 288,
 
 730 S.E.2d 226
 
 , 230 (2012). "Actions that are malicious, corrupt, or outside of the scope of official duties will pierce the cloak of official immunity[.]"
 
 Fullwood
 
 , --- N.C. App. at ----,
 
 792 S.E.2d at 550
 
 .
 

 "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another."
 
 Grad v. Kaasa
 
 ,
 
 312 N.C. 310
 
 , 313,
 
 321 S.E.2d 888
 
 , 890 (1984).
 

 It is well settled that absent evidence to the contrary, it will always be presumed that public officials will discharge
 
 *560
 
 their duties in good faith and exercise their powers in accord with the spirit and purpose of the law. This presumption places a heavy burden on the party challenging the validity of public officials' actions to overcome this presumption by competent and substantial evidence.
 

 Strickland v. Hedrick,
 

 194 N.C.App. 1
 
 , 10,
 
 669 S.E.2d 61
 
 , 68 (2008) (citation omitted). "Any evidence presented to rebut this presumption must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise."
 
 Fullwood
 
 , --- N.C. App. at ----,
 
 792 S.E.2d at 550-51
 
 (citation and internal quotation marks omitted).
 

 In the present case, plaintiffs' second amended complaint included allegations that defendant was "acting beyond the scope of his employment as Superintendent[ ]" and that defendant's actions were "outside the scope of his duties as Superintendent and only meant to further his personal campaign to maliciously defame Mitchell and RBA."
 

 We note that although the second amended complaint alleges that defendant's actions were beyond the scope of his duties, "we are not required to treat this allegation of a legal conclusion as true."
 
 Dalenko
 
 ,
 
 157 N.C.App. at 56
 
 ,
 
 578 S.E.2d at 604
 
 .
 

 The factual allegations in the second amended complaint, considered as true, tend to show, in pertinent part, that: on 4 December 2013, a video entitled "Dr. Pruden Superintendent of the Year Video" was published on the YouTube website where defendant references the "competition," that BCS does not operate schools for a profit, and tells the competition "game on"; defendant submitted the impact statement, approved by the Brunswick County Board of Education, to the Office of Charter Schools in compliance with N.C. Gen. Stat. § 115C-238.29D(d)(3) (2012)
 
 [1]
 
 ; the impact statement noted that "Brunswick County opposes the approval of the South Brunswick Charter School application[ ]"; the impact statement was then posted on a website maintained by the North Carolina Department of Public Instruction, Office of Charter Schools; in a letter dated 7 August 2013, addressed to Mr. Cobey and all members of the SBE, and signed by defendant
 
 *83
 
 as Superintendent of BCS, defendant expressed concerns regarding possible conflicts of interest surrounding
 
 *561
 
 the RBA and CDS's board of directors and stated that the letter was endorsed unanimously by four members of the Brunswick County Board of Education; in a letter dated 3 September 2013, addressed to Mr. Cobey and all members of the SBE, and signed by defendant as Superintendent of BCS, defendant requested that the SBE delay voting on whether or not to grant preliminary approval for the fourth charter school to be managed by the RBA and to seek additional information from the Office of Charter Schools regarding conflicts of interest; in a letter dated 4 November 2013, addressed to Mr. Cobey and all members of the SBE, and signed by defendant as Superintendent of BCS, defendant sought an update and response from the SBE regarding its investigation into the potential conflicts of interest; on 20 December 2013, defendant received a letter from Mr. Cobey that informed him that the State Ethics Commission had determined that Mitchell was eligible to serve on the Charter School Advisory Board; in a letter dated 7 January 2014, addressed to Mr. Cobey and all members of the SBE, and signed by defendant as Superintendent of BCS, defendant acknowledges receiving the 20 December 2013 letter but addresses "additional concerns to which [the 20 December 2013] letter did not respond[ ]" and asks the SBE to pursue a "real, substantive investigation of these issues before committing over one million dollars ($1,000,000) of additional taxpayer dollars next year[ ]"; and on 7 January 2014, defendant instructed the Executive Director of Quality Assurance and Community Engagement with BCS to republish the 7 August 2013, 3 September 2013, 4 November 2013, and 7 January 2014 letters to media outlets across southeast North Carolina.
 

 After considering the foregoing, we hold that the second amended complaint does not allege facts which would support a legal conclusion that any of defendant's alleged conduct was outside the scope of his duties as Superintendent of BCS. Defendant's actions were consistent with the duties and authority of a superintendent and constituted permissible opinions regarding his concerns for the approval of a new charter school.
 

 As to the allegations of malice, the second amended complaint merely stated that defendant's actions were "only meant to further his personal campaign to maliciously defame Mitchell and RBA[.]" It is well established that "a conclusory allegation that a public official acted willfully and wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss. The facts alleged in the complaint must support such a conclusion."
 
 Meyer v. Walls
 
 ,
 
 347 N.C. 97
 
 , 114,
 
 489 S.E.2d 880
 
 , 890 (1997). Here, plaintiffs state bare, conclusory allegations that
 
 *562
 
 defendant acted with malice. Because we presume that defendant discharged his duties in good faith and exercised his power in accordance with the spirit and purpose of the law and plaintiffs have not shown any evidence to the contrary, we hold that the second amended complaint failed to allege facts which would support a legal conclusion that defendant acted with malice.
 

 In conclusion, we hold that the allegations of plaintiff's second amended complaint are legally insufficient to overcome defendant's public official immunity. Accordingly, we hold that the trial court erred by denying defendant's motion to dismiss plaintiffs' second amended complaint under the doctrine of public official immunity, and reverse the order of the trial court. Because we hold that defendant is entitled to public official immunity, we do not reach defendant's remaining arguments.
 

 III.
 
 Conclusion
 

 The 20 January 2016 order of the trial court is reversed.
 

 REVERSED.
 

 Judges STROUD and ZACHARY concur.
 

 [1]
 

 The statute in place at that time stated that the "board of education of the local school administrative unit in which the charter school is located" would have "an opportunity to be heard by the State Board of Education on any adverse impact the proposed growth would have on the unit's ability to provide a sound basic education to its students[.]" N.C. Gen. Stat. § 115C-238.29D(d)(3) (2012).