IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-204

Filed: 3 November 2020

Cleveland County, No. 19-CVS-2087

WILLIE A. GREEN, SR., Plaintiff,

v.

RICK HOWELL (INDIVIDUALLY), Defendant.

Appeal by Defendant from order entered 13 January 2020 by Judge Todd Pomeroy in Cleveland County Superior Court. Heard in the Court of Appeals 26 August 2020.

*The Freedmen Law Group, by Desmon L. Andrade, for Plaintiff-Appellee.*

*Stott, Hollowell, Palmer & Windham, L.L.P., by Martha Raymond Thompson, for Defendant-Appellant.*

COLLINS, Judge.

Defendant Rick Howell appeals from the trial court's order denying his motion to dismiss the complaint filed against him. Defendant contends he is entitled to public official immunity because he was acting as a city manager in the performance of his official duties, and Plaintiff's allegations of malice or corruption are insufficient to bar immunity. We reverse the trial court's order.

## I. Background

Willie A. Green, Sr. ("Plaintiff"), commenced this action on 31 October 2019 by filing a complaint against Rick Howell ("Defendant"), in his individual capacity, alleging libel per se and seeking compensatory and punitive damages. Plaintiff alleged the following relevant facts in his complaint:

> 4. [Plaintiff] has served in a leadership capacity in the community for the duration of his residency . . . .
>
> 5. [Plaintiff was] a Nine-year NFL veteran [and] the Chief Executive Officer and President of 5-Star . . . .
>
> 6. [Plaintiff has had] a successful career in the business and corporate sectors . . . [and] obtained his master's degree in Sport[s] Administration . . . .
>
> . . . .
>
> 8. [In] 2016, [Plaintiff] met with the Mayor . . . and . . . [Defendant] (City Manager) to discuss the prospects of a potential Public Private Partnership between 5-Star and the City of Shelby . . . .
>
> 9. [T]he Mayor and Defendant . . . [were] well aware of [Plaintiff's] accomplishments as a professional athlete and as a businessman as both facts were well documented in local publications and evidenced by his other successful business ventures within the community . . . .
>
> . . . .
>
> 12. Over the span of approximately two years and as the result of numerous written and in person communications between [Plaintiff], the Mayor and [Defendant] several proposals were funded by [Plaintiff] . . . .
>
> 13. [Plaintiff] hired a sports advisory firm to provide an initial proposal to [Defendant] and the same was completed and delivered on approximately June 4, 2016. This proposal was concluded with an inquiry of whether [Defendant] would like to proceed with discussions on what

the city would be able to provide. This inquiry was answered in the affirmative.

14. [Plaintiff] use[d] personal capital and assets of investors [to] expend[] extensive resources, including but not limited to the purchase of 16.68 acres of land as to decrease the strain on city resources in furtherance of a partnership in its most literal interpretation.

15. Subsequently, [Plaintiff] provided a new proposal which included a "location solution" by bringing privately owned land to the table while still operating within the confines of the proposals advanced by [Defendant].

16. On approximately July 6, 2017, this proposal was rejected and new and unfounded basis for said rejection were given to [Plaintiff], leaving him surprised and confused.

17. At this point it became apparent that this process that was promised to be open and in good faith was being handled in an opposite fashion.

18. Still attempting to salvage the once promising partnership and all the historical implications that came therewith [Plaintiff] again in good faith altered his plans and in November of 2017 reopened discussions regarding how to make the sports facility work on the property of Holly Oak Park.

19. On approximately January 24, 2018, [Plaintiff] met with the Mayor and [Defendant] and continued discussions regarding the partnership at Holly Oak Park.

20. Between January 29, 2018, and February 4, 2018, email correspondences confirmed the January 24, 2018, meeting between [Plaintiff], the Mayor and [Defendant] and furthermore evidenced the continued assurances of optimism from [Defendant] who stated in pertinent part[,] "The concept that you presented to the Mayor and I is exciting and we are hopeful that your business is successful in making the sports complex a reality . . . "

21. During this same communication chain, [Defendant] indicated that all proposals would be subject to the scrutiny

of City Council in an "open process" and that "City Council will make the final decision."

22. Through the retention of communications from [Defendant] to City Council it is clear that [Plaintiff] was given promises of a thorough and open vetting process while [Defendant] steered the city council's review of [Plaintiff's] proposals with unfounded pessimism, injurious statements and concealment of the detailed analytics provided for the council's review and necessary for an informed and good faith "final decision" as promised.

23. Most damaging, in an April 17, 2018 email correspondence directed to City Council Members [Defendant], **<u>maliciously, with corrupt intent and acting outside and beyond the scope of his official duties,</u>** stated in pertinent part[,] "[]My assessment of the situation is that [Plaintiff] does not have the money or financial backing to build the sports complex on the land he owns adjacent to Holly Oak Park especially given he has a contingency contract to sell the best part of it to an apartment complex. I believe he somehow sees Holly Oak Park as a way to develop that sports complex using public resources. I have serious doubts he will put any significant amount of money toward any improvements.

24. On July 17, 2018 a public records request was sent to the City of Shelby requesting any documents or information relied upon in [Defendant's] April 17, 2018 "assessments". This public records request was responded to by Shelby City Clerk . . . stating, "To my knowledge no such documents exist."

25. Additionally, on October 23, 2018 the Mayor fielded a meeting with several concerned and disgruntled leaders of Cleveland County including Plaintiff . . . during which the bad faith negotiations of the City of Shelby became a point of discussion.

26. During this discussion the Mayor stated to Plaintiff . . . and the others in attendance that he and Defendant . . . "made it clear to Plaintiff that the City would not be able to help fund any part of the project". The Mayor was then

presented with an E-mail from Defendant . . . to Plaintiff that completely contradicted the Mayor's representation and left him surprised and unable to explain the contradiction.

27. This most recent interaction further displays the bad faith nature of the discussions and negotiations conducted by the City of Shelby and led by Defendant . . . .

28. Despite [Plaintiff's] undeniable qualifications, adequate resources and display of business flexibility and ingenuity [Plaintiff] was denied an open and fair consideration of his business proposals due in large part to the damaging comments made by Defendant . . . .
. . . .

30. On April 17, 2018 Defendant Ricky Howell, **maliciously. with corrupt intent and acting outside and beyond the scope of his official duties,** communicated via electronic mail several statements that were false.

In lieu of filing an answer, Defendant moved to dismiss the complaint pursuant to North Carolina Rules of Civil Procedure 12(b)(1), (2), and (6). Attached to Defendant's motion was the City of Shelby Resolution No. 56-2008 referenced in the complaint; an email Defendant sent on 17 April 2018 to the City Council also referenced in the complaint and upon which the libel claim was based; and an affidavit provided by Defendant, authenticating both. The email sent by Defendant reads as follows:

> Good afternoon. I need direction from Council as to how you want to approach [Plaintiff's] request to appear before Council to present his proposal. I offer the following suggestion.
>
> I believe it would be unfruitful for Council to invite him to appear and then engage in a painstaking back and forth

over details. But if Council wishes to merely listen to his proposal which was previously emailed to you all then I certainly see no harm in that.

[Plaintiff's] latest letter provided to you last night takes a great deal out of context from discussions the Mayor and I had with him early on. He never specifically indicated that it was his desire to essentially take over Holly Oak Park. If he had I know the Mayor and I both would have told him that was a non starter. My assessment of the situation is that [Plaintiff] does not have the money or financial backing to build the sports complex on the land he owns adjacent to Holly Oak Park especially given he has a contingency contract to sell the best part of it for an apartment complex. I believe he somehow sees Holly Oak Park as a way to develop that sports complex using public resources. I have serious doubts he will put any significant amount of money toward any improvements.

A public/private partnership has to be a two way street where there is some direct public benefit derived. In this situation I only see a private benefit. Direction from Council is needed. I would remind you all that discussing this amongst yourselves in groups less than 4 is fine as long as the open meetings law is considered. Otherwise this will need to be discussed at your next regular Council meeting.

I would like to hear your individual thoughts if you wish to call me.

After a hearing, the trial court entered an order on 13 January 2020 denying Defendant's motion to dismiss. Defendant timely filed notice of appeal.

## II. Appellate Jurisdiction

We first determine whether Defendant's appeal is properly before us. Where, as here, the trial court's order does not dispose of all claims, it is an interlocutory order. N.C. Gen. Stat. § 1A-1, Rule 54(a) (2019). There is generally no right of

immediate appeal of an interlocutory order. *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). Immediate appeal may be taken, however, if the order affects a substantial right or constitutes an adverse ruling as to personal jurisdiction, N.C. Gen. Stat. § 1-277, or if the trial court certified the order for immediate appeal under N.C. Gen. Stat. § 1A-1, Rule 54(b). The record in this case does not indicate that the trial court certified the order pursuant to Rule 54(b).

Defendant moved to dismiss the complaint under Rules 12(b)(1), 12(b)(2), and 12(b)(6) based on his assertion that he is entitled to "absolute immunity" and "public official's immunity." Public official immunity is "a derivative form of sovereign immunity." *Epps v. Duke Univ., Inc.*, 122 N.C. App. 198, 203, 468 S.E.2d 846, 850 (1996). The trial court denied the motion without specifically stating the ground or grounds upon which it ruled.

We dismiss Defendant's appeal from the trial court's order denying his Rule 12(b)(1) motion based on the defense of public official immunity. Orders denying Rule 12(b)(1) motions to dismiss based on sovereign immunity, and therefore public official immunity, "are not immediately appealable because they neither affect a substantial right nor constitute an adverse ruling as to personal jurisdiction." *Can Am South, LLC v. State*, 234 N.C. App. 119, 124, 759 S.E.2d 304, 308 (2014) (citing *Meherrin Indian Tribe v. Lewis*, 197 N.C. App. 380, 384, 677 S.E.2d 203, 207 (2009)).

We allow Defendant's appeal from the trial court's order denying his Rule 12(b)(2) and 12(b)(6) motions to dismiss based on public official immunity. "As has been held consistently by this Court, denial of a Rule 12(b)(2) motion premised on sovereign immunity constitutes an adverse ruling on personal jurisdiction and is therefore immediately appealable under section 1-277(b)." *Id.* (citations omitted). Moreover, we are bound by the longstanding rule that the denial of a 12(b)(6) motion based on the defense of sovereign immunity affects a substantial right and is immediately appealable under section 1-277(a). *See Green v. Kearney*, 203 N.C. App. 260, 266, 690 S.E.2d 755, 761 (2010).

### III. Standard of Review

"[U]pon a defendant's motion to dismiss for lack of personal jurisdiction [under Rule 12(b)(2)], the plaintiff bears the burden of making out a *prima facie* case that jurisdiction exists." *Bauer v. Douglas Aquatics, Inc.*, 207 N.C. App. 65, 68, 698 S.E.2d 757, 761 (2010) (citation omitted). "[W]hen a defendant supplements [his] motion with affidavits or other supporting evidence, the unverified allegations of a plaintiff's complaint can no longer be taken as true or controlling[.]" *Id.* (internal quotation marks and citation omitted) (emphasis omitted). If the plaintiff offers no evidence in response, this Court considers (1) any allegations in the complaint that are not controverted by the defendant's evidence and (2) all facts in the defendant's evidence, which are uncontroverted because of the plaintiff's failure to offer evidence in

response. *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693-94, 611 S.E.2d 179, 183 (2005) (citation omitted).

> Where . . . the record contains no indication that the parties requested that the trial court make specific findings of fact, and the order appealed from contains no findings, we presume that the trial court made factual findings sufficient to support its ruling, and it is this Court's task to review the record to determine whether it contains evidence that would support the trial court's legal conclusions, and to review the trial court's legal conclusions de novo.

*McCullers v. Lewis*, 265 N.C. App. 216, 220-21, 828 S.E.2d 524, 531 (2019) (citations omitted).

In this case, Defendant's motion to dismiss, supplemented with supporting evidence and an affidavit, did not controvert Plaintiff's allegations. Plaintiff rested on the unverified allegations in his complaint. As a result, this Court considers the allegations in Plaintiff's complaint and all facts in Defendant's evidence (together, "the Pleadings"). Additionally, because the trial court's three findings of fact do not relate to the scope of Defendant's duties or whether he acted with malice or corruption, we presume the trial court made factual findings sufficient to support its ruling. It is this Court's task to review the Pleadings to determine whether they contain evidence that would support the trial court's legal conclusions, and to review the trial court's legal conclusions de novo. *Id.*

## IV. Analysis

Public official immunity precludes a suit against a public official in his individual capacity and protects him from liability as long as the public official "lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption[.]" *Smith v. State*, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976) (citation omitted).

> It is well settled that absent evidence to the contrary, it will always be presumed that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law. This presumption places a heavy burden on the party challenging the validity of public officials' actions to overcome this presumption by competent and substantial evidence.

*Strickland v. Hedrick*, 194 N.C. App. 1, 10, 669 S.E.2d 61, 68 (2008) (internal quotation marks and citations omitted). To rebut the presumption and hold a public official liable in his individual capacity, a plaintiff's complaint must allege, and the facts alleged must support a conclusion, "that [the official's] act, or failure to act, was corrupt or malicious, or 'that [the official] acted outside of and beyond the scope of his duties.'" *Doe v. Wake Cty.*, 264 N.C. App. 692, 695-96, 826 S.E.2d 815, 819 (2019) (citation omitted).

## A. Scope of Duties

A city manager's duties are statutorily defined in N.C. Gen. Stat. § 160A-148, which states in pertinent part that:

> (2.) He shall direct and supervise the administration of all departments, offices, and agencies of the city, subject to the general direction and control of the council, except as otherwise provided by law. (3) He shall attend all meetings of the council and recommend any measures that he deems expedient. . . . (7) He shall make any other reports that the council may require concerning the operations of city departments, offices, and agencies subject to his direction and control.

N.C. Gen. Stat. § 160A-148 (2019).

Plaintiff states in his brief that he "is not objecting to the fact that [Defendant] was in fact acting in his capacity as City Manager of the City of Shelby at the time the tortious behaviors plead [sic] in Appellees [sic] complaint took place[,]" and the Pleadings show that Defendant acted within the scope of his statutory authority and duties. Defendant met with Plaintiff on behalf of Shelby to discuss Defendant's proposals for a sports complex and communicated with the mayor and the City Council regarding the proposals. Defendant sought guidance from the City Council and provided his own recommendation regarding the proposals. Defendant, in his capacity as the city manager, communicated by email to the City Council explicitly seeking its guidance on Plaintiff's most recent proposal to the City Council. The Pleadings demonstrate that Defendant "lawfully exercise[d] the judgment and

discretion with which he is invested by virtue of his office[.]" *Smith*, 289 N.C. at 331, 222 S.E.2d at 430.

## B. Malice or Corruption

Because the Pleadings show that Plaintiff acted within the scope of his statutory authority and duties, to rebut the presumption of his good faith and exercise of powers in accord with the spirit and purpose of the law, Plaintiff must have sufficiently alleged, and the facts must support a conclusion, that Defendant's acts were malicious or corrupt.

"A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Mitchell v. Pruden,* 251 N.C. App. 554, 559, 796 S.E.2d 77, 82 (2017) (citation omitted). An act is corrupt when it is done with "a wrongful design to acquire some pecuniary profit or other advantage." *State v. Hair*, 114 N.C. App. 464, 468, 442 S.E.2d 163, 165 (1994) (citation omitted). A conclusory allegation that a public official acted maliciously or corruptly is not sufficient, by itself, to withstand a motion to dismiss. *Doe*, 264 N.C. App. at 695-96, 826 S.E.2d at 819. "The facts alleged in the complaint must support such a conclusion." *Meyer v. Walls*, 347 N.C. 97, 114, 489 S.E.2d 880, 890 (1997). *See Mitchell,* 251 N.C. App. at 555-56, 560-61, 796 S.E.2d at 79-80, 82-83 (plaintiffs' bare, conclusory allegation that defendant's actions were "only meant to further his personal campaign to maliciously

defame [plaintiffs]" was insufficient to support a legal conclusion that defendant acted with malice).

Plaintiff's complaint alleges, in pertinent part, as follows:

> 22. Through the retention of communications from [Defendant] to City Council it is clear that [Plaintiff] was given promises of a thorough and open vetting process while [Defendant] steered the city council's review of [Plaintiff's] proposals with unfounded pessimism, injurious statements and concealment of the detailed analytics provided for the council's review and necessary for an informed and good faith "final decision" as promised.
>
> 23. Most damaging, in an April 17, 2018 email correspondence directed to City Council Members [Defendant], **maliciously, with corrupt intent and acting outside and beyond the scope of his official duties,** stated in pertinent part[,] "[]My assessment of the situation is that [Plaintiff] does not have the money or financial backing to build the sports complex on the land he owns adjacent to Holly Oak Park especially given he has a contingency contract to sell the best part of it to an apartment complex. I believe he somehow sees Holly Oak Park as a way to develop that sports complex using public resources. I have serious doubts he will put any significant amount of money toward any improvements.
>
> 24. On July 17, 2018 a public records request was sent to the City of Shelby requesting any documents or information relied upon in [Defendant's] April 17, 2018 "assessments". This public records request was responded to by Shelby City Clerk . . . stating, "To my knowledge no such documents exist."
>
> 25. Additionally, on October 23, 2018 the Mayor fielded a meeting with several concerned and disgruntled leaders of Cleveland County including Plaintiff . . . during which the bad faith negotiations of the City of Shelby became a point of discussion.

> 26. During this discussion the Mayor stated to Plaintiff . . . and the others in attendance that he and Defendant . . . "made it clear to Plaintiff that the City would not be able to help fund any part of the project". The Mayor was then presented with an E-mail from Defendant . . . to Plaintiff that completely contradicted the Mayor's representation and left him surprised and unable to explain the contradiction.
>
> 27. This most recent interaction further displays the bad faith nature of the discussions and negotiations conducted by the City of Shelby and led by Defendant . . . .

We note that although the complaint alleges that Defendant acted maliciously, with corrupt intent, "we are not required to treat this allegation of a legal conclusion as true." *Dalenko v. Wake Cnty. Dep't of Human Servs.*, 157 N.C. App. 49, 56, 578 S.E.2d 599, 604 (2003).

Although Plaintiff alleges Defendant acted in bad faith by his "unfounded pessimism, injurious statements and concealment of the detailed analytics provided for the council's review," Plaintiff alleges no false statements of fact made by Defendant. The fact that Defendant discussed the project with Plaintiff and considered various proposals from him over a two-year period prior to expressing certain concerns to the City Council does not tend to support a conclusion that Defendant acted maliciously or corruptly by recommending measures for expediency and reporting his concerns to the City Council. Moreover, the fact that Defendant sent an email to the City Council expressing his concerns about Plaintiff's financial ability to complete the project, even though the Shelby City Clerk did not know of any

documents or information relied upon by Defendant in making his assessment, does not support a conclusion that Defendant acted maliciously or corruptly. In fact, Defendant's office vests him with the authority and responsibility to exercise judgment and discretion, as discussed above.

The plain text of Defendant's email indicates that Defendant was seeking the City Council's direction and sharing with the City Council his assessment of the situation based on his own judgment. Defendant began with an explicit request for direction on how best to respond to Plaintiff's most recent proposal. Defendant explicitly offered the opinion that "no harm" could come from discussing the proposal with Plaintiff. After reporting discrepancies between his understanding of the negotiations and Plaintiff's newest proposal, Defendant again explicitly requested "[d]irection from Council." Defendant recommended that the City Council be mindful of the applicable open meeting laws and reiterated his desire to receive input from the City Council. These details of Defendant's email contradict Plaintiff's assertions that Defendant intentionally engaged in a process that lacked transparency. Rather, Defendant's email illustrates his intent to adhere to the City Council's wishes, comply with applicable laws regarding transparency of communications regarding City Council business, and fulfill his statutory obligations.

Plaintiff's complaint has not sufficiently alleged facts that would support a conclusion that Defendant acted in a manner that was "contrary to his duty and

which he intend[ed] to be prejudicial or injurious to another[,]" *Mitchell*, 251 N.C. App. at 559, 796 S.E.2d at 82, or acted with "a wrongful design to acquire some pecuniary profit or other advantage," *Hair*, 114 N.C. App. at 468, 442 S.E.2d at 165. Because we presume that Defendant discharged his duties in good faith and exercised his power in accordance with the spirit and purpose of the law, and Plaintiff has not alleged facts to the contrary, the complaint failed to support a legal conclusion that Defendant acted with malice or corruption.

## V. Conclusion

Plaintiff has failed to allege facts necessary to support a conclusion that Defendant acted outside the scope of his duties or acted in a matter that was malicious or corrupt. Thus, Plaintiff has failed to allege sufficient facts to overcome the heavy burden of rebutting the presumption that Defendant discharged his duties as a public official in good faith, *see Strickland*, 194 N.C. App. at 10, 669 S.E.2d at 68, and public official immunity bars Plaintiff's action against Defendant. Accordingly, Plaintiff has failed to make out a *prima facie* case that jurisdiction exists, and the trial court erred by denying Defendant's Rule 12(b)(2) motion to dismiss. Because the trial court erred by denying Defendant's Rule 12(b)(2) motion to dismiss, we need not address whether the trial court erred by denying Defendant's Rule 12(b)(6) motion to dismiss.

We reverse the trial court's order.

REVERSED.

Judges INMAN and BERGER concur.