IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA20-204

 Filed: 3 November 2020

Cleveland County, No. 19-CVS-2087

WILLIE A. GREEN, SR., Plaintiff,

 v.

RICK HOWELL (INDIVIDUALLY), Defendant.

 Appeal by Defendant from order entered 13 January 2020 by Judge Todd

Pomeroy in Cleveland County Superior Court. Heard in the Court of Appeals

26 August 2020.

 The Freedmen Law Group, by Desmon L. Andrade, for Plaintiff-Appellee.

 Stott, Hollowell, Palmer & Windham, L.L.P., by Martha Raymond Thompson,
 for Defendant-Appellant.

 COLLINS, Judge.

 Defendant Rick Howell appeals from the trial court’s order denying his motion

to dismiss the complaint filed against him. Defendant contends he is entitled to

public official immunity because he was acting as a city manager in the performance

of his official duties, and Plaintiff’s allegations of malice or corruption are insufficient

to bar immunity. We reverse the trial court’s order.
 GREEN V. HOWELL

 Opinion of the Court

 I. Background

 Willie A. Green, Sr. (“Plaintiff”), commenced this action on 31 October 2019 by

filing a complaint against Rick Howell (“Defendant”), in his individual capacity,

alleging libel per se and seeking compensatory and punitive damages. Plaintiff

alleged the following relevant facts in his complaint:

 4. [Plaintiff] has served in a leadership capacity in the
 community for the duration of his residency . . . .
 5. [Plaintiff was] a Nine-year NFL veteran [and] the Chief
 Executive Officer and President of 5-Star . . . .
 6. [Plaintiff has had] a successful career in the business
 and corporate sectors . . . [and] obtained his master’s
 degree in Sport[s] Administration . . . .
 ....
 8. [In] 2016, [Plaintiff] met with the Mayor . . . and . . .
 [Defendant] (City Manager) to discuss the prospects of a
 potential Public Private Partnership between 5-Star and
 the City of Shelby . . . .
 9. [T]he Mayor and Defendant . . . [were] well aware of
 [Plaintiff’s] accomplishments as a professional athlete and
 as a businessman as both facts were well documented in
 local publications and evidenced by his other successful
 business ventures within the community . . . .
 ....
 12. Over the span of approximately two years and as the
 result of numerous written and in person communications
 between [Plaintiff], the Mayor and [Defendant] several
 proposals were funded by [Plaintiff] . . . .
 13. [Plaintiff] hired a sports advisory firm to provide an
 initial proposal to [Defendant] and the same was completed
 and delivered on approximately June 4, 2016. This
 proposal was concluded with an inquiry of whether
 [Defendant] would like to proceed with discussions on what

 -2-
 GREEN V. HOWELL

 Opinion of the Court

the city would be able to provide. This inquiry was
answered in the affirmative.
14. [Plaintiff] use[d] personal capital and assets of
investors [to] expend[] extensive resources, including but
not limited to the purchase of 16.68 acres of land as to
decrease the strain on city resources in furtherance of a
partnership in its most literal interpretation.
15. Subsequently, [Plaintiff] provided a new proposal
which included a “location solution” by bringing privately
owned land to the table while still operating within the
confines of the proposals advanced by [Defendant].
16. On approximately July 6, 2017, this proposal was
rejected and new and unfounded basis for said rejection
were given to [Plaintiff], leaving him surprised and
confused.
17. At this point it became apparent that this process that
was promised to be open and in good faith was being
handled in an opposite fashion.
18. Still attempting to salvage the once promising
partnership and all the historical implications that came
therewith [Plaintiff] again in good faith altered his plans
and in November of 2017 reopened discussions regarding
how to make the sports facility work on the property of
Holly Oak Park.
19. On approximately January 24, 2018, [Plaintiff] met
with the Mayor and [Defendant] and continued discussions
regarding the partnership at Holly Oak Park.
20. Between January 29, 2018, and February 4, 2018, email
correspondences confirmed the January 24, 2018, meeting
between [Plaintiff], the Mayor and [Defendant] and
furthermore evidenced the continued assurances of
optimism from [Defendant] who stated in pertinent part[,]
“The concept that you presented to the Mayor and I is
exciting and we are hopeful that your business is successful
in making the sports complex a reality . . . ”
21. During this same communication chain, [Defendant]
indicated that all proposals would be subject to the scrutiny

 -3-
 GREEN V. HOWELL

 Opinion of the Court

of City Council in an “open process” and that “City Council
will make the final decision.”
22. Through the retention of communications from
[Defendant] to City Council it is clear that [Plaintiff] was
given promises of a thorough and open vetting process
while [Defendant] steered the city council’s review of
[Plaintiff’s] proposals with unfounded pessimism, injurious
statements and concealment of the detailed analytics
provided for the council’s review and necessary for an
informed and good faith “final decision” as promised.
23. Most damaging, in an April 17, 2018 email
correspondence directed to City Council Members
[Defendant], maliciously, with corrupt intent and
acting outside and beyond the scope of his official
duties, stated in pertinent part[,] “[]My assessment of the
situation is that [Plaintiff] does not have the money or
financial backing to build the sports complex on the land
he owns adjacent to Holly Oak Park especially given he has
a contingency contract to sell the best part of it to an
apartment complex. I believe he somehow sees Holly Oak
Park as a way to develop that sports complex using public
resources. I have serious doubts he will put any significant
amount of money toward any improvements.
24. On July 17, 2018 a public records request was sent to
the City of Shelby requesting any documents or
information relied upon in [Defendant’s] April 17, 2018
“assessments”. This public records request was responded
to by Shelby City Clerk . . . stating, “To my knowledge no
such documents exist.”
25. Additionally, on October 23, 2018 the Mayor fielded a
meeting with several concerned and disgruntled leaders of
Cleveland County including Plaintiff . . . during which the
bad faith negotiations of the City of Shelby became a point
of discussion.
26. During this discussion the Mayor stated to Plaintiff . . .
and the others in attendance that he and Defendant . . .
“made it clear to Plaintiff that the City would not be able
to help fund any part of the project”. The Mayor was then

 -4-
 GREEN V. HOWELL

 Opinion of the Court

 presented with an E-mail from Defendant . . . to Plaintiff
 that completely contradicted the Mayor’s representation
 and left him surprised and unable to explain the
 contradiction.
 27. This most recent interaction further displays the bad
 faith nature of the discussions and negotiations conducted
 by the City of Shelby and led by Defendant . . . .
 28. Despite [Plaintiff’s] undeniable qualifications,
 adequate resources and display of business flexibility and
 ingenuity [Plaintiff] was denied an open and fair
 consideration of his business proposals due in large part to
 the damaging comments made by Defendant . . . .
 ....
 30. On April 17, 2018 Defendant Ricky Howell,
 maliciously. with corrupt intent and acting outside
 and beyond the scope of his official duties,
 communicated via electronic mail several statements that
 were false.

 In lieu of filing an answer, Defendant moved to dismiss the complaint pursuant

to North Carolina Rules of Civil Procedure 12(b)(1), (2), and (6). Attached to

Defendant’s motion was the City of Shelby Resolution No. 56-2008 referenced in the

complaint; an email Defendant sent on 17 April 2018 to the City Council also

referenced in the complaint and upon which the libel claim was based; and an

affidavit provided by Defendant, authenticating both. The email sent by Defendant

reads as follows:

 Good afternoon. I need direction from Council as to how
 you want to approach [Plaintiff’s] request to appear before
 Council to present his proposal. I offer the following
 suggestion.
 I believe it would be unfruitful for Council to invite him to
 appear and then engage in a painstaking back and forth

 -5-
 GREEN V. HOWELL

 Opinion of the Court

 over details. But if Council wishes to merely listen to his
 proposal which was previously emailed to you all then I
 certainly see no harm in that.
 [Plaintiff’s] latest letter provided to you last night takes a
 great deal out of context from discussions the Mayor and I
 had with him early on. He never specifically indicated that
 it was his desire to essentially take over Holly Oak Park.
 If he had I know the Mayor and I both would have told him
 that was a non starter. My assessment of the situation is
 that [Plaintiff] does not have the money or financial
 backing to build the sports complex on the land he owns
 adjacent to Holly Oak Park especially given he has a
 contingency contract to sell the best part of it for an
 apartment complex. I believe he somehow sees Holly Oak
 Park as a way to develop that sports complex using public
 resources. I have serious doubts he will put any significant
 amount of money toward any improvements.
 A public/private partnership has to be a two way street
 where there is some direct public benefit derived. In this
 situation I only see a private benefit. Direction from
 Council is needed. I would remind you all that discussing
 this amongst yourselves in groups less than 4 is fine as long
 as the open meetings law is considered. Otherwise this will
 need to be discussed at your next regular Council meeting.
 I would like to hear your individual thoughts if you wish to
 call me.

 After a hearing, the trial court entered an order on 13 January 2020 denying

Defendant’s motion to dismiss. Defendant timely filed notice of appeal.

 II. Appellate Jurisdiction

 We first determine whether Defendant’s appeal is properly before us. Where,

as here, the trial court’s order does not dispose of all claims, it is an interlocutory

order. N.C. Gen. Stat. § 1A-1, Rule 54(a) (2019). There is generally no right of

 -6-
 GREEN V. HOWELL

 Opinion of the Court

immediate appeal of an interlocutory order. Goldston v. Am. Motors Corp., 326 N.C.

723, 725, 392 S.E.2d 735, 736 (1990). Immediate appeal may be taken, however, if

the order affects a substantial right or constitutes an adverse ruling as to personal

jurisdiction, N.C. Gen. Stat. § 1-277, or if the trial court certified the order for

immediate appeal under N.C. Gen. Stat. § 1A-1, Rule 54(b). The record in this case

does not indicate that the trial court certified the order pursuant to Rule 54(b).

 Defendant moved to dismiss the complaint under Rules 12(b)(1), 12(b)(2), and

12(b)(6) based on his assertion that he is entitled to “absolute immunity” and “public

official’s immunity.” Public official immunity is “a derivative form of sovereign

immunity.” Epps v. Duke Univ., Inc., 122 N.C. App. 198, 203, 468 S.E.2d 846, 850

(1996). The trial court denied the motion without specifically stating the ground or

grounds upon which it ruled.

 We dismiss Defendant’s appeal from the trial court’s order denying his Rule

12(b)(1) motion based on the defense of public official immunity. Orders denying Rule

12(b)(1) motions to dismiss based on sovereign immunity, and therefore public official

immunity, “are not immediately appealable because they neither affect a substantial

right nor constitute an adverse ruling as to personal jurisdiction.” Can Am South,

LLC v. State, 234 N.C. App. 119, 124, 759 S.E.2d 304, 308 (2014) (citing Meherrin

Indian Tribe v. Lewis, 197 N.C. App. 380, 384, 677 S.E.2d 203, 207 (2009)).

 -7-
 GREEN V. HOWELL

 Opinion of the Court

 We allow Defendant’s appeal from the trial court’s order denying his Rule

12(b)(2) and 12(b)(6) motions to dismiss based on public official immunity. “As has

been held consistently by this Court, denial of a Rule 12(b)(2) motion premised on

sovereign immunity constitutes an adverse ruling on personal jurisdiction and is

therefore immediately appealable under section 1-277(b).” Id. (citations omitted).

Moreover, we are bound by the longstanding rule that the denial of a 12(b)(6) motion

based on the defense of sovereign immunity affects a substantial right and is

immediately appealable under section 1-277(a). See Green v. Kearney, 203 N.C. App.

260, 266, 690 S.E.2d 755, 761 (2010).

 III. Standard of Review

 “[U]pon a defendant’s motion to dismiss for lack of personal jurisdiction [under

Rule 12(b)(2)], the plaintiff bears the burden of making out a prima facie case that

jurisdiction exists.” Bauer v. Douglas Aquatics, Inc., 207 N.C. App. 65, 68, 698 S.E.2d

757, 761 (2010) (citation omitted). “[W]hen a defendant supplements [his] motion

with affidavits or other supporting evidence, the unverified allegations of a plaintiff’s

complaint can no longer be taken as true or controlling[.]” Id. (internal quotation

marks and citation omitted) (emphasis omitted). If the plaintiff offers no evidence in

response, this Court considers (1) any allegations in the complaint that are not

controverted by the defendant’s evidence and (2) all facts in the defendant’s evidence,

which are uncontroverted because of the plaintiff’s failure to offer evidence in

 -8-
 GREEN V. HOWELL

 Opinion of the Court

response. Banc of Am. Sec. LLC v. Evergreen Int’l Aviation, Inc., 169 N.C. App. 690,

693-94, 611 S.E.2d 179, 183 (2005) (citation omitted).

 Where . . . the record contains no indication that the
 parties requested that the trial court make specific findings
 of fact, and the order appealed from contains no findings,
 we presume that the trial court made factual findings
 sufficient to support its ruling, and it is this Court’s task to
 review the record to determine whether it contains
 evidence that would support the trial court’s legal
 conclusions, and to review the trial court’s legal conclusions
 de novo.

McCullers v. Lewis, 265 N.C. App. 216, 220-21, 828 S.E.2d 524, 531 (2019) (citations

omitted).

 In this case, Defendant’s motion to dismiss, supplemented with supporting

evidence and an affidavit, did not controvert Plaintiff’s allegations. Plaintiff rested

on the unverified allegations in his complaint. As a result, this Court considers the

allegations in Plaintiff’s complaint and all facts in Defendant’s evidence (together,

“the Pleadings”). Additionally, because the trial court’s three findings of fact do not

relate to the scope of Defendant’s duties or whether he acted with malice or

corruption, we presume the trial court made factual findings sufficient to support its

ruling. It is this Court’s task to review the Pleadings to determine whether they

contain evidence that would support the trial court’s legal conclusions, and to review

the trial court’s legal conclusions de novo. Id.

 -9-
 GREEN V. HOWELL

 Opinion of the Court

 IV. Analysis

 Public official immunity precludes a suit against a public official in his

individual capacity and protects him from liability as long as the public official

“lawfully exercises the judgment and discretion with which he is invested by virtue

of his office, keeps within the scope of his official authority, and acts without malice

or corruption[.]” Smith v. State, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976)

(citation omitted).

 It is well settled that absent evidence to the contrary, it will
 always be presumed that public officials will discharge
 their duties in good faith and exercise their powers in
 accord with the spirit and purpose of the law. This
 presumption places a heavy burden on the party
 challenging the validity of public officials’ actions to
 overcome this presumption by competent and substantial
 evidence.

Strickland v. Hedrick, 194 N.C. App. 1, 10, 669 S.E.2d 61, 68 (2008) (internal

quotation marks and citations omitted). To rebut the presumption and hold a public

official liable in his individual capacity, a plaintiff’s complaint must allege, and the

facts alleged must support a conclusion, “that [the official’s] act, or failure to act, was

corrupt or malicious, or ‘that [the official] acted outside of and beyond the scope of his

duties.’” Doe v. Wake Cty., 264 N.C. App. 692, 695-96, 826 S.E.2d 815, 819 (2019)

(citation omitted).

 - 10 -
 GREEN V. HOWELL

 Opinion of the Court

A. Scope of Duties

 A city manager’s duties are statutorily defined in N.C. Gen. Stat. § 160A-148,

which states in pertinent part that:

 (2.) He shall direct and supervise the administration of all
 departments, offices, and agencies of the city, subject to the
 general direction and control of the council, except as
 otherwise provided by law. (3) He shall attend all meetings
 of the council and recommend any measures that he deems
 expedient. . . . (7) He shall make any other reports that the
 council may require concerning the operations of city
 departments, offices, and agencies subject to his direction
 and control.

N.C. Gen. Stat. § 160A-148 (2019).

 Plaintiff states in his brief that he “is not objecting to the fact that [Defendant]

was in fact acting in his capacity as City Manager of the City of Shelby at the time

the tortious behaviors plead [sic] in Appellees [sic] complaint took place[,]” and the

Pleadings show that Defendant acted within the scope of his statutory authority and

duties. Defendant met with Plaintiff on behalf of Shelby to discuss Defendant’s

proposals for a sports complex and communicated with the mayor and the City

Council regarding the proposals. Defendant sought guidance from the City Council

and provided his own recommendation regarding the proposals. Defendant, in his

capacity as the city manager, communicated by email to the City Council explicitly

seeking its guidance on Plaintiff’s most recent proposal to the City Council. The

Pleadings demonstrate that Defendant “lawfully exercise[d] the judgment and

 - 11 -
 GREEN V. HOWELL

 Opinion of the Court

discretion with which he is invested by virtue of his office[.]” Smith, 289 N.C. at 331,

222 S.E.2d at 430.

B. Malice or Corruption

 Because the Pleadings show that Plaintiff acted within the scope of his

statutory authority and duties, to rebut the presumption of his good faith and exercise

of powers in accord with the spirit and purpose of the law, Plaintiff must have

sufficiently alleged, and the facts must support a conclusion, that Defendant’s acts

were malicious or corrupt.

 “A defendant acts with malice when he wantonly does that which a man of

reasonable intelligence would know to be contrary to his duty and which he intends

to be prejudicial or injurious to another.” Mitchell v. Pruden, 251 N.C. App. 554, 559,

796 S.E.2d 77, 82 (2017) (citation omitted). An act is corrupt when it is done with “a

wrongful design to acquire some pecuniary profit or other advantage.” State v. Hair,

114 N.C. App. 464, 468, 442 S.E.2d 163, 165 (1994) (citation omitted). A conclusory

allegation that a public official acted maliciously or corruptly is not sufficient, by

itself, to withstand a motion to dismiss. Doe, 264 N.C. App. at 695-96, 826 S.E.2d at

819. “The facts alleged in the complaint must support such a conclusion.” Meyer v.

Walls, 347 N.C. 97, 114, 489 S.E.2d 880, 890 (1997). See Mitchell, 251 N.C. App. at

555-56, 560-61, 796 S.E.2d at 79-80, 82-83 (plaintiffs’ bare, conclusory allegation that

defendant’s actions were “only meant to further his personal campaign to maliciously

 - 12 -
 GREEN V. HOWELL

 Opinion of the Court

defame [plaintiffs]” was insufficient to support a legal conclusion that defendant

acted with malice).

 Plaintiff’s complaint alleges, in pertinent part, as follows:

 22. Through the retention of communications from
 [Defendant] to City Council it is clear that [Plaintiff] was
 given promises of a thorough and open vetting process
 while [Defendant] steered the city council’s review of
 [Plaintiff’s] proposals with unfounded pessimism, injurious
 statements and concealment of the detailed analytics
 provided for the council’s review and necessary for an
 informed and good faith “final decision” as promised.
 23. Most damaging, in an April 17, 2018 email
 correspondence directed to City Council Members
 [Defendant], maliciously, with corrupt intent and
 acting outside and beyond the scope of his official
 duties, stated in pertinent part[,] “[]My assessment of the
 situation is that [Plaintiff] does not have the money or
 financial backing to build the sports complex on the land
 he owns adjacent to Holly Oak Park especially given he has
 a contingency contract to sell the best part of it to an
 apartment complex. I believe he somehow sees Holly Oak
 Park as a way to develop that sports complex using public
 resources. I have serious doubts he will put any significant
 amount of money toward any improvements.
 24. On July 17, 2018 a public records request was sent to
 the City of Shelby requesting any documents or
 information relied upon in [Defendant’s] April 17, 2018
 “assessments”. This public records request was responded
 to by Shelby City Clerk . . . stating, “To my knowledge no
 such documents exist.”
 25. Additionally, on October 23, 2018 the Mayor fielded a
 meeting with several concerned and disgruntled leaders of
 Cleveland County including Plaintiff . . . during which the
 bad faith negotiations of the City of Shelby became a point
 of discussion.

 - 13 -
 GREEN V. HOWELL

 Opinion of the Court

 26. During this discussion the Mayor stated to Plaintiff . . .
 and the others in attendance that he and Defendant . . .
 “made it clear to Plaintiff that the City would not be able
 to help fund any part of the project”. The Mayor was then
 presented with an E-mail from Defendant . . . to Plaintiff
 that completely contradicted the Mayor’s representation
 and left him surprised and unable to explain the
 contradiction.
 27. This most recent interaction further displays the bad
 faith nature of the discussions and negotiations conducted
 by the City of Shelby and led by Defendant . . . .

 We note that although the complaint alleges that Defendant acted maliciously,

with corrupt intent, “we are not required to treat this allegation of a legal conclusion

as true.” Dalenko v. Wake Cnty. Dep’t of Human Servs., 157 N.C. App. 49, 56, 578

S.E.2d 599, 604 (2003).

 Although Plaintiff alleges Defendant acted in bad faith by his “unfounded

pessimism, injurious statements and concealment of the detailed analytics provided

for the council’s review,” Plaintiff alleges no false statements of fact made by

Defendant. The fact that Defendant discussed the project with Plaintiff and

considered various proposals from him over a two-year period prior to expressing

certain concerns to the City Council does not tend to support a conclusion that

Defendant acted maliciously or corruptly by recommending measures for expediency

and reporting his concerns to the City Council. Moreover, the fact that Defendant

sent an email to the City Council expressing his concerns about Plaintiff’s financial

ability to complete the project, even though the Shelby City Clerk did not know of any

 - 14 -
 GREEN V. HOWELL

 Opinion of the Court

documents or information relied upon by Defendant in making his assessment, does

not support a conclusion that Defendant acted maliciously or corruptly. In fact,

Defendant’s office vests him with the authority and responsibility to exercise

judgment and discretion, as discussed above.

 The plain text of Defendant’s email indicates that Defendant was seeking the

City Council’s direction and sharing with the City Council his assessment of the

situation based on his own judgment. Defendant began with an explicit request for

direction on how best to respond to Plaintiff’s most recent proposal. Defendant

explicitly offered the opinion that “no harm” could come from discussing the proposal

with Plaintiff. After reporting discrepancies between his understanding of the

negotiations and Plaintiff’s newest proposal, Defendant again explicitly requested

“[d]irection from Council.” Defendant recommended that the City Council be mindful

of the applicable open meeting laws and reiterated his desire to receive input from

the City Council. These details of Defendant’s email contradict Plaintiff’s assertions

that Defendant intentionally engaged in a process that lacked transparency. Rather,

Defendant’s email illustrates his intent to adhere to the City Council’s wishes, comply

with applicable laws regarding transparency of communications regarding City

Council business, and fulfill his statutory obligations.

 Plaintiff’s complaint has not sufficiently alleged facts that would support a

conclusion that Defendant acted in a manner that was “contrary to his duty and

 - 15 -
 GREEN V. HOWELL

 Opinion of the Court

which he intend[ed] to be prejudicial or injurious to another[,]” Mitchell, 251 N.C.

App. at 559, 796 S.E.2d at 82, or acted with “a wrongful design to acquire some

pecuniary profit or other advantage,” Hair, 114 N.C. App. at 468, 442 S.E.2d at 165.

Because we presume that Defendant discharged his duties in good faith and exercised

his power in accordance with the spirit and purpose of the law, and Plaintiff has not

alleged facts to the contrary, the complaint failed to support a legal conclusion that

Defendant acted with malice or corruption.

 V. Conclusion

 Plaintiff has failed to allege facts necessary to support a conclusion that

Defendant acted outside the scope of his duties or acted in a matter that was

malicious or corrupt. Thus, Plaintiff has failed to allege sufficient facts to overcome

the heavy burden of rebutting the presumption that Defendant discharged his duties

as a public official in good faith, see Strickland, 194 N.C. App. at 10, 669 S.E.2d at 68,

and public official immunity bars Plaintiff’s action against Defendant. Accordingly,

Plaintiff has failed to make out a prima facie case that jurisdiction exists, and the

trial court erred by denying Defendant’s Rule 12(b)(2) motion to dismiss. Because

the trial court erred by denying Defendant’s Rule 12(b)(2) motion to dismiss, we need

not address whether the trial court erred by denying Defendant’s Rule 12(b)(6) motion

to dismiss.

 We reverse the trial court’s order.

 - 16 -
 GREEN V. HOWELL

 Opinion of the Court

REVERSED.

Judges INMAN and BERGER concur.

 - 17 -